## GLOBE WORKS *vs.* ROBERT WRIGHT.

T. entered into a written contract with the United States to construct two steamboats complete; and then contracted with the firm of H. & C. for them to build the engines for the boats. H. & C., after partially building the engines, mortgaged them to W., who agreed with them orally that they "might go on with the work on the engines, and finish the same, under the contract with T.;" and then proceeded further with their construction, until they became insolvent. T. replevied the incomplete engines from the messenger in insolvency; mortgaged them to S.; and placed them in the workshop of the G. Works, a corporation of which S. was president, and which agreed orally with T. to finish them. W. then took them on a writ of replevin against T. and S. And finally the G. Works, contending that before W.'s replevin they had done some work upon the engines, under their agreement with T., for which they had a lien, replevied them from W. *Held,* on the trial of this action of replevin, (1) that the written contract of T. with the United States was admissible in evidence to show the state of facts existing when the subsequent oral contracts were made, and thus assist in ascertaining what they were; (2) that the judgment in the action of replevin brought by W. against T. and S. was not competent evidence of the title of W. as against the G. Works, unless some person authorized to represent the G. Works appeared therein in their behalf; (3) that the fact that T. obtained possession of the engines on his writ of replevin against the messenger in insolvency, and afterwards recovered judgment on that writ, was admissible as *primâ facie* evidence to show his right in them; (4) that the construction and effect of the oral agreement of W. with H. & C., about going on and finishing the engines under their contract with T., were for the court, there being no dispute about the words; but (5) that this contract did not give H. & C. a lien, as against W. as mortgagee, for the work done by them on the engines, nor authorize them, or those having their rights, to employ any one else to work thereon in such a manner as to create a lien for such work.

REPLEVIN of the materials composing the parts of two unfinished steam-engines. Trial in the superior court, before *Reed*, J. who allowed the following bill of exceptions :

" James Tetlow contracted to build for the United States two iron tug-boats, the Palos and Leyden, and the steam-engines therefor. In the winter or spring of 1865 he contracted with the firm of Hepworth & Carr, machinists, for the construction of the steam-engines. The plaintiffs claimed title, among other ways based on the contract with the government and the contract with said firm, upon the ground that they had acquired a lien upon the engines, for work done by them, under the circumstances hereinafter stated.

" Evidence was in the case tending to show that, after Tetlow contracted with Hepworth & Carr for the construction of the engines, said firm went on building them at a workshop then occupied by them ; that while they were so at work, on July 25, 1865, they transferred or mortgaged the engines, in their then condition, to the defendant, who loaned them money thereon, by instruments which make a part of the case ; * that they delivered possession thereof to the defendant, in the different parts of a workshop in South Boston where the parts of the engines were lying ; that at the same time it was agreed by the defendant that Hepworth & Carr might go on with the work on the engines, and finish the same, under the contract with Tetlow, the engines being only partially completed ; that the defendant appointed Seth A. Choate, a clerk of Hepworth & Carr, keeper for him of the engines, and delivered the parts thereof to him, in the same manner in which they were delivered to the defendant, none of the parts thereof, after either delivery, being removed from the shop of Hepworth & Carr, or from the places therein, in different parts of the shop, where they were, or from the hands of the workmen employed thereon ; that the engines had just been removed from another shop, which Hepworth & Carr had pre-

---

* Copies of these instruments, consisting of a bill of sale and an instrument of defeasance, were annexed to the bill of exceptions, but are immaterial to he reported, inasmuch as they are assumed, in the decision of the case, to constitute a valid mortgage from Hepworth & Carr to the defendant.

viously occupied, and were there in the present premises, just occupied by them, and where they were engaged in finishing the work; that at some time during the negotiations it was stated by Hepworth & Carr, that, with the means borrowed of the defendant, they would be enabled to complete the work, and would then have a large amount of money coming to them from Tetlow; that Choate continued to act as keeper of the engines for the defendant in the shop of Hepworth & Carr, and to retain possession of them until they were taken away by replevin; that Hepworth & Carr with their men continued to work as theretofore on the engines, using substantially the greater part of the money borrowed of the defendant for that purpose, until they stopped by reason of the commencement of their proceedings in insolvency on September 6, 1865, when their property and rights of property in the shop were taken possession of by Benjamin F. Bayley, messenger in insolvency, who appointed Choate his keeper thereof, Choate, when consenting to act, not abandoning, but continuing his possession as heretofore stated, as keeper for this defendant and informing him thereof; that on September 8, 1865, Tetlow brought his replevin writ against Bayley for the engines, and Harum Merrill, a deputy sheriff, took the same thereon in the said shop of Hepworth & Carr, and delivered them there to Tetlow on September 11, and on that day, and up to September 14, he removed the same from the works of Hepworth & Carr to the works of the plaintiffs, with whom he had, before the removal, but after the failure, contracted orally that they should immediately go on and finish the engines, which were then about two thirds completed; that John Souther acted for the company with Tetlow in the removal of the engines, engaging the teams which removed them, he knowing at the time that Tetlow had taken them on replevin; that the plaintiffs, as soon as the parts of the engines began to arrive at their shop, began to work thereon; that, before service of the next replevin on September 14, they had been preparing to finish the work, making or getting patterns or plans, had placed or were arranging to place some of the bed-pieces, and had done some mechanical work on some of the pieces, but just what ones did not appear, that on September 14 the

defendant brought the said writ of replevin for said engines against Tetlow and John Souther, the officer then taking possession of them and keeping the same in the plaintiffs' works; and that, while the same, upon delivery to him by the sheriff, were being removed by the defendant as plaintiff in his replevin writ then pending, on September 25, the plaintiffs commenced this action and took the said engines.

" There was evidence from the defendant, tending to show that the contract of Tetlow with Hepworth & Carr was an oral one, and in substance only that they should build, and deliver the engines, when done, for a specified round sum, to be paid as the work progressed; that John Souther, at the time of the replevin in the said case of Wright against Tetlow and himself, as the president or agent or managing man of the plaintiffs, had the charge and custody, and, as the defendant contended, the possession, of the engines at their works, for the plaintiffs; but not that he had any different or other charge, custody or control, than he had of other property of the concern.

" The contract between Tetlow and the United States was put in by the plaintiffs against the defendant's objection.

" The record of the case of Tetlow against Bayley, and that of the case of Wright against Tetlow and Souther, were put into the case, and were before the court, including the defendants' bill of exceptions in the latter case, and the adjudication of the court thereon as reported in 99 Mass. 397; the former by the plaintiffs, and the latter by the defendant.

" John Souther was president of the plaintiffs' corporation, the owner of a large majority of the stock, and the principal business man at the works. Evidence of the defendant tended to show that Souther was one of the sureties for Tetlow on his bond in his replevin suit, and that Tetlow mortgaged the engines at the time to said Souther to secure him because of said liability ·· that the only other stockholders in the plaintiffs' corporation at the time were, Daniel N. Pickering, the treasurer, and George Souther, a brother of John, both of whom were engaged at the works, and Pickering was one of the appraisers in the replevin suit of said Tetlow; that the suit of Wright against Tetlow and

Souther was defended, and the defendants appeared in said case and defended the suit. The defendant's evidence by one Morse, which was not controverted, was, that in the trial of that case this defendant, Wright, set up and claimed title to the engines only under the said transfer or mortgage to him from Hepworth & Carr ; that this was controverted in evidence, and was the issue submitted on his part there ; that the defendants at the trial there set up and claimed the other said sources of title, the same as claimed here, except that the lien claimed here was not claimed or set up there ; and that these other sources of title were made the subjects of evidence and adjudication therein. Souther testified that he never took said property, or claimed anything under the said mortgage, but in what he did acted solely for the plaintiffs in this suit.

" The plaintiffs offered evidence tending to show that, under the original contract between Hepworth & Carr and Tetlow, as to the building of the engines, the property passed to Tetlow from time to time, as the work was done and he made payments thereon ; that the conveyance to this defendant was fraudulent and without consideration, and there was no sufficient delivery to him, or taking or retaining possession of them by him ; that Choate did not say anything to Bayley as to his keeping for this defendant, but, if he was then in possession for this defendant, abandoned that possession, and consented to hold the engines as Bayley's keeper in insolvency. But the judge declined to submit these questions to the jury ; and before the arguments to the jury, the defendant's counsel, being called upon by the judge to state his claim in matter of law, contended and asked the judge to rule in accordance with the following propositions of law :

" ' The defendant claims, as to the case of Wright against Tetlow and Souther, 1. That upon the record, and the undisputed evidence of Morse as to the issues raised and submitted, the adjudication in that case is conclusive upon the questions of title decided, as between the parties and all privies of estate or interest. 2. That the plaintiffs are privies, as they claim title only under Tetlow. 3. That the plaintiffs are also bound by the adjudication upon the following assumptions of fact, if they are

found : John Souther, one of the defendants therein, was acting not as a stranger but as the officer and agent of the plaintiffs' corporation, in taking and holding the possession and control of the engines, when Wright replevied them from his hands as one of the defendants, if the suit was defended by him as the president and officer of the corporation, or by the corporation in fact.'

" ' The defendant claims, as to the case of Tetlow against Bayley, that the record of the default and judgment in that case is not evidence in this suit, and should be excluded on the following grounds : 1. The defendant's not being a party to it, nor privy, and having had no opportunity or right to defend. 2. The default being subsequent to the other replevins in evidence. 3. Because (or if found) the engines were taken out of the defendant's possession in a suit against a stranger, Bayley.'

" ' The defendant further claims as to replevin in Wright against Tetlow and Souther, 1. The plaintiff then, having taken the property on delivery from the officer, and being in possession by virtue of such process, had a title thereby, as against the plaintiffs, during the pendency of that suit ; and the Globe Works could not legally take it out of his hands by a writ of replevin in their favor. 2. That this is certainly so, if it is found as a fact that the engines had been taken possession of, and were being held in the custody and under the active control of John Souther, as the president and agent of the company, and in their behalf. when replevied from him. His possession would be that of the company, and a privity of estate or interest would exist between them, and he would not stand as a stranger to the company. 3. That, if it is urged that this principle invoked would have applied to the defendant in his replevin suit, the answer is, that this objection could only have been taken in defence of that suit, and the writ of Tetlow against Bayley having been put in evidence on the question of title, &c., the question is concluded. Besides this, Bayley was a stranger to the defendant in the one suit, while in the case of Wright against Tetlow and Souther, one of the defendants, and who withheld the property, stood as the representative of the company plaintiffs, and on their rights only.'

" The judge refused to so rule, and ruled that, after the mortgage of the engines by Hepworth & Carr to this defendant, Hepworth & Carr had the right to redeem the property, and by virtue of said right, and of the agreement heretofore stated as to their continuing work thereon and finishing the same, they had the right to go on and finish them, and to employ other mechanics to work thereon, in such a manner as to give such workmen a lien thereon ; that upon their failure this right passed to their assignee or creditors ; that said judgment against Bayley was competent evidence, and had the effect to pass the rights and title of Hepworth. & Carr, or their creditors, to Tetlow, and to give Tetlow sufficient title to enable him to employ the plaintiffs upon the engines in such a manner as to entitle them to a lien ; that the mortgage aforesaid from Tetlow to Souther had no effect to prevent the plaintiffs from acquiring the lien here set up ; that the judgment in the case of Wright against Tetlow and Souther was not a bar to the maintaining of this suit, unless the plaintiffs in this case appeared in that suit, or authorized some person to appear therein and contest their claim ; and that, if this was done, the judgment would be a bar ; that, in order to constitute such an appearance, it was not sufficient that one or more corporators or officers were sued or appeared, but it must be shown that the plaintiffs, as a corporation, there appeared, or authorized some representatives in their behalf to appear and contest their right to these machines , and that this suit might be maintained, although at the time of its commencement this defendant was holding the engines as plaintiff in replevin in the suit of Wright against Tetlow and Souther then pending.

" The defendant's counsel, in contending against these rulings, claimed that, upon said evidence by parol as to Hepworth & Carr continuing to work upon and their right to finish the engines, he had a right to go to the jury as to what the agreement and understanding was, and that by it the work was to be done by Hepworth & Carr at their shop at their expense, and while the defendant held the possession of the engines there, and it was not that the engines might be taken out of his possession and elsewhere to be done by others. But the judge ruled that the con-

struction of that agreement, inasmuch as the words were agreed by the parties to have been as hereinbefore stated, was a question of law for the court, and there was no question for the jury. Hereupon, at the suggestion of the judge and assented to by the counsel, upon said rulings and refusals being made and excepted to, the case was submitted to the jury upon the two questions : 1. Whether the plaintiffs had performed any labor upon the engines which entitled them to a lien. 2. Whether the plaintiffs appeared in the suit of Wright against Tetlow and Souther.

" The judge, refusing the said requests of the defendants, instructed the jury in substance according to the rulings stated above, and further, that the plaintiffs would have a lien, if they did, before the defendant replevied them on September 14, any mechanical work upon the engines, or any labor in relation to the engines which it was necessary to do in order to complete them ; that in the latter class would be included the labor and expense done and incurred, for instance, in placing in position a bed-piece or other heavy portion of the machinery, necessary to be done in order to complete the work ; but not the teaming of the engines from the shop of Hepworth & Carr to the plaintiffs' works ; that it was of no consequence how much the amount of the work or expense was ; that if it was of the character described, it would give a lien on the whole engines, whatever it was.

" The judge further instructed the jury, that upon the other question the burden was upon the defendant to establish as a fact, and satisfy the jury, that the plaintiffs appeared in the case of Wright against Tetlow and Souther, and their right was contested and adjudged in that case ; that the ordinary way in which persons appear in a suit is by having their names entered upon the docket as appearing, coming into court personally, or by filing some paper, asking leave to come in, or by filing some written answer, or by some act of that nature, which appears on the records of the court ; that in this case it is not contended that there was anything of the kind ; that it appears and is agreed that the only claim of right which the corporation made was not set up or decided in that case ; that, it being necessary to show that the corporation came into court, it is not enough

nor approaching to be enough, to show that one of the corpora-
tors, or one of its officers, did that, but the jury must be satisfied
that the corporation was there, and appeared or authorized some
person, who appeared representing them, to contest their right to
these machines.

" The defendant's counsel, at the close of the charge, said that
he wanted two points understood, and asked the judge to instruct
the jury that it was not necessary either that the corporation
appear on the record or that their claim of lien should have been
presented in that case. The judge, in the presence of the jury,
but without rising to address them again, replied, as to the first
point, ' That is so, sir.' Upon the second point he said, ' I have
instructed them about that; I have instructed that it is necessary
for them to find that they employ somebody as their representa-
tive, as the representative of the corporation, with authority to
come in there and contest their right ; ' and further, in reply, that
it need not appear of record.

" The jury rendered a verdict for the plaintiffs; and the de-
fendant excepted to the foregoing refusals, rulings and instruc-
tions on the part of the court."

*A. A. Ranney*, (*N. Morse* with him,) for the defendant.

*R. H. Dana, Jr.*, & *T. K. Lothrop*, for the plaintiffs.

GRAY, J. The difficulties of this case arise out of the compli-
cation of the facts and the want of order and clearness of state-
ment in the bill of exceptions.

The contract between the United States and Tetlow was rightly
admitted to show the state of facts existing when the subsequent
oral contracts were made, and thus assist in ascertaining what
those contracts were.

The instructions requested by the defendant were rightly re-
fused. So far as they had any legal foundation, they were in-
cluded in the instructions given.

The question whether the plaintiffs had the lien which they
now assert for work done upon the engines while in their posses-
sion was not tried in the action of replevin brought by Wright
against Tetlow and Souther. These plaintiffs were not a party
to that action. The judgment therein was not therefore compe-

tent evidence against them, unless some person authorized to rep-resent them appeared therein in their behalf; which has been negatived by the jury under correct and sufficient instructions. The fact that Souther was president and general agent of the corporation was not conclusive evidence that he was authorized to bind the corporation in this respect.

The fact that Tetlow, by a writ of replevin against Bayley, obtained possession of the property, and afterwards recovered judgment on that writ, was admissible as *primâ facie* evidence to show the right of Tetlow. But that judgment was not compe-tent to prove title against the present defendant, who was not a party to the action.

It was rightly ruled that the construction and effect of the oral contract made by this defendant with Hepworth & Carr were to be determined by the court. Where a contract is oral, the question what the contract is must, if controverted, be tried by the jury as a question of fact; but where the terms of a contract are undis-puted, its construction and effect, where the contract is oral as well as where it is written, are to be determined by the court. *Rice* v. *Dwight Manufacturing Co.* 2 Cush. 80. *Short* v. *Wood-ward*, 13 Gray, 96. *Pratt* v. *Langdon*, 12 Allen, 544.

But we are of opinion that this contract, while it permitted Hepworth & Carr, the mortgagors, themselves to go on and finish the engines, did not give them a lien, as against the mortgagee, for work done by them thereon, nor authorize them, or those hav-ing their rights, to employ any other party to work thereon in such a manner as to create a lien for such work. In order to con-stitute such a lien, the work must be done under agreement with the owner of the property, or with some one authorized by him to make such an agreement. *Hollingsworth* v. *Dow*, 19 Pick. 228. The ruling of the superior court was therefore erroneous in this respect, assuming the mortgage to be valid; and the ques-tion whether the evidence offered by the plaintiffs to impeach it was rightly rejected is not before us on the defendant's excep-tions. *Exceptions sustained.*