## Sarah Powers v. Frederick G. Russell.

*Married women : Purchasing goods for family use : Individual liability.* Where a woman, purchasing in a store of one who knows that she is a married woman and living with her husband, goods suitable for ordinary family use, does not affirmatively claim to be buying on her individual account, the natural inference would be that she was buying them on her husband's account, and for the use of the family; and in the absence of any express agreement, she would not thereby render herself individually liable.

*Liability of married women for goods purchased for family use.* In an action against a married woman, to charge her individually for goods thus purchased, it is competent on cross-examination of the plaintiff, who has sworn simply that she purchased the goods in his store, and they were charged to her on his books, to show that he knew she was a married woman.

*Evidence : Books of account.* In such an action it is error to refuse to order the plaintiff to produce his books, on the application of the defendant, after the plaintiff has testified that he kept books and had them in court, and that the goods were charged to the defendant; this precluded her from showing, by the books themselves, that they were not so charged, if such were the fact.

*Married women : Evidence : Liability of husband.* The defendant in such a case has a right to show any fact tending to prove that the goods were purchased for, or on account of the husband, and it is competent therefore to ask her for whom she got the goods; for an answer that the goods were purchased on the account, and upon the credit of her husband, would be responsive to this question.

*Certiorari : Justice of the peace : Return : Record.* A statement appended to the return of the justice to a writ of *certiorari,* of what purports to be further testimony in the case, which, though signed by the justice, is not dated, and does not purport to be a part of the return, but is inconsistent with, and contradictory of the return itself, where it does not appear that it was made in obedience to any order for a further return, or how it came to be made, will not be considered as a part of the record.

*Heard October 31. Decided November 7.*

Error to Van Buren Circuit.

*Foster & Coleman,* for plaintiff in error.

*W. G. Tucker* and *H. F. Severens,* for defendant in error.

CHRISTIANCY, CH. J.

Russell, defendant in error, brought suit (by attachment) before a justice of the peace, against Mrs. Powers, the plaintiff in error, for the price of certain goods which

he claimed to have sold her. At the time of the sale of the goods she was a married woman living with her husband, and the goods were purchased for the use of the family.

The justice rendered a judgment in favor of the plaintiff (below), which was removed to the circuit court for the county of Van Buren, by defendant (plaintiff in error), and there affirmed. The case now comes to this court by writ of error.

The justice's return to the *certiorari* is in the following words:

"I, Harry C. Church, the justice of the peace in the writ hereto annexed named, do certify to the circuit court of said county, that before the coming to me of the said writ, to wit: On the fifteenth day of March, A. D. 1871, at the request of Frederick G. Russell, in the said writ named, I issued a writ of attachment, directed to any constable of said county, to attach so much of the goods and chattels of the defendant therein named (except such as are exempt by law from execution), as will be sufficient to satisfy said demand of said plaintiff; and that he return said attachment to me, the said justice, at my office, in the township of Decatur, in said county, on the 25th day of March, A. D. 1871, which writ of attachment was, on or before the return day thereof, delivered to me by William Mead, a constable of said county, with a return thereon signed by him, that the same was personally served on the 16th day of March, then instant.

"And I do also certify that, at the time and place above specified for the return of said writ of attachment, the said parties appeared before me. Plaintiff declared verbally on the common counts in assumpsit. Defendant pleaded the general issue; and they then and there consented to adjourn said cause to the 28th day of April, then proximo, at ten

o'clock in the forenoon, at which time and place the said parties appeared. And I, the said justice, thereupon proceeded to try the said cause.

"On the trial of said cause, Frederick G. Russell was sworn, and testified that he was the plaintiff in this suit. 'Have known Mrs. Powers within the last six years past; have sold her goods in Decatur.'

" *Cross-examined.*—' Have been acquainted with Mrs. Powers, the defendant, since October 12th, 1870; first got acquainted with Mrs. Powers in my store in Decatur; she was in my store to purchase goods; the first thing sold and charged to her was ribbon; can't state any length. of time I have known Mrs. Powers; I keep books, have them in court.'

" *Question.*—Will you produce them?

"Objected to, for the reason that no attempt has been made on the part of the plaintiff to introduce them. In all cases we are entitled to the best evidence, and in this case Russell sold the goods, delivered them, gave the credit, and remembers it all, and he could not use his books, and neither can they. If they desire them they must employ the power of this court and obtain them; and further, no reason has been shown for their introduction, and if they could be introduced it would be for some reason, not because an attorney desired it. Objection sustained. To which ruling of the said justice the counsel for the defendant did then and there except.

" 'Mrs. Powers is the lady here in court; I charged the goods to her, individually.'

" *Question.*—Did you know, at the time you sold her the goods, that she was a married woman?

"Objected to as irrelevant and immaterial. Objection sustained. To which ruling of said justice the counsel for the defendant did then and there except.

"Mrs. Sarah Powers, sworn on the part of the defendant.—'I live in South Bend, Indiana. I know the plaintiff in this suit. I got acquainted with him in his store in Decatur. I have lived in Decatur. I moved here in December, 1869. My name is Sarah Powers. I am a married woman, and was at the time these goods were bought; I was living with my husband, Thomas Powers, at that time, and afterwards, and all the time I lived in Decatur.'

"*Question.*—Did you carry on any business or trade here while living in Decatur, separate from your husband's?

"Objected to for the reason that it was irrelevant and immaterial. Objection sustained. To which ruling of said justice the counsel for the defendant did then and there except.

"'I did get goods at Russell's store; my husband did send me for goods at Russell's; I put these goods to the family's use; I was in the habit of getting goods for the family while in Decatur.'

"*Question.*—For whom did you get goods at Russell's?

"Objected to as irrelevant and immaterial. Objection sustained. To which ruling of said justice the counsel for the defendant did then and there except.

"*Question.*—To what use were these goods put?

"Objected to as irrelevant and immaterial. Objection sustained. To which ruling of the said justice the counsel for the defendant did then and there except.

"'The goods bought at Russell's store, between October 21st, 1870, and January 25th, 1871, were cloth for girl's sacque, some socks, lady's hat, cotton flannel, hose, nubia, table cloth, towels, lace, buttons, thread, and silk.'

"*Cross-examined.*—'The first five dollars I paid Russell, my husband got for playing at a dance at Millburg. My

husband got the ten dollars from the band, and five dollars he sent me from South Bend.'

"And I also certify the foregoing is substantially all the testimony given on the said trial, and that after hearing the proofs and allegations of the parties, I, the said justice, did forthwith render judgment in favor of the plaintiff, against the defendant, for seven dollars and five cents damages, and five dollars and twenty cents costs.

"All of which I send with process, pleadings and other things touching the aforesaid proceedings and judgment, as by the said writ I am commanded.

"Given under my hand the 12th day of June, A. D. 1871.

"HARRY C. CHURCH, *Justice of the Peace.*"

Now it is apparent from this return, that there is not a word of evidence in the case tending to show any express promise by Mrs. Powers, to pay for these goods; nor that she had any knowledge that the goods were charged to her, instead of her husband; nor, if she was known to the plaintiff to be a married woman living with her husband,—which she offered to show,—is there any thing fairly tending to show that she had any reason to think that the credit was given to her.

The plaintiff, it is true, says he sold her goods; that she was in his store to purchase goods. If he knew at the time that she was a married woman, and especially if he knew she was living with her husband, this language, I am inclined to think, is no more than he might, and naturally would have used, of the sale of goods to the wife of any one of his customers, though he knew the purchase was made on account of the husband, for the family use, and had charged them to him.

But he goes on to say that he charged the goods to her individually (without saying when he made the charge).

He however fails to show that she assented to their being so charged, or that she had any notice or reason to believe that he would so charge them.

Now if he knew that she was a married woman, living with her husband, and the goods were not of a character to indicate that they were bought for other than family use in the husband's family, and she did not claim affirmatively to be purchasing them on her individual account, the natural inference would be that she was purchasing them on her husband's account, and for the use of his family; and she could not be made individually liable without an express agreement to become so, or that the goods should be charged, or the credit given, to herself. This court did not, in *Campbell v. White, 22 Mich., 178,* go as far as to hold the wife liable without such special agreement; and we think it would be a dangerous innovation to go to that extent, and one in clear derogation of the rights of married women. But the justice refused her the privilege of showing, by the cross-examination of the plaintiff, that he knew at the time he sold the goods, that she was a married woman; and this, of course, precluded her from showing also, that *he knew* she was living with her husband. This, of itself, I think was an error for which the judgment should be reversed.

But, on the hypothesis that the plaintiff's testimony did tend to show an express agreement of the wife to pay for the goods, or that they should be charged, or the credit given to her, instead of the husband, which (if the fact were admitted) would bring the case within the principle of *Campbell v. White,* upon which the defendant in error so confidently relies, we still think the ruling of the justice was clearly erroneous. The court, in *Campbell v. White,* though the evidence of the wife's agreement to pay was very clear and strong, did not go so far as to deny her the

right of controverting it, and showing, if she could, that the credit was not given to her. This we think is just what the justice did in the present case.

The defendant having the right to show that the goods were not charged to her on the plaintiff's books, at the time of the purchase, and the plaintiff having testified that he kept books and had them in court, was asked by the defendant to produce them; but the justice at the instance of the plaintiff, refused to order the plaintiff to produce them; on the ground (among others) that, as the "plaintiff remembered it all," and *he* could not use his books, so neither could the defendant, the plaintiff's oral testimony being the *best* evidence. If, therefore, these goods were in fact charged at the time to the husband, instead of the wife, she was precluded from showing the fact by the books themselves.

Again, she had a right to show any fact tending to prove that the goods were purchased for, or on account of the husband; yet, when she was asked on her direct examination by her counsel, "for whom she got the goods at Russell's," this question was excluded. An answer showing that the goods were purchased on the account and upon the credit of the husband, would have been responsive to this question.

The judgment of the circuit court and that of the justice must be reversed, with costs to plaintiff in error, of all the courts.

We have thus disposed of this case upon what we consider the return of the justice,—a copy of which we have given above. There is, however, printed with the record, just after the return as above given, the following:

"F. G. RUSSELL:—'I sold Mrs. Powers goods and delivered them to her myself, and she agreed to pay for them; she has not done so, and there is now due me from her,

the sum of seven dollars and three cents; whole bill of goods in the account, amounts to twenty-four dollars and seventy-five cents; she has paid up until it leaves the balance.'

"Mrs. Sarah Powers testified that she bought the góods herself, and said she would pay for them.

"HARRY C. CHURCH, *Justice of the Peace.*"

This, though signed by the justice, does not purport to be a part of the return to the writ, is not dated; nor does it appear that it was made in obedience to any order for a further return ; nor is there any thing to show how it came there; and, being inconsistent with, and contradictory of the return itself, it must be rejected as no part of the record.

The other Justices concurred.