# William H. Willard and another v. Bridget Magoon.

*Mechanics' lien cases:  Appeals:  Practice in supreme court:  Verdict of jury.*
The supreme court has no jurisdiction to review proceedings to enforce a mechanic's lien under the statute (*Comp. L. 1871, ch. 215*) except by virtue of the special act (*Laws of 1873, p. 119*) conferring such jurisdiction; and as that act specifically provides only for appeals to be taken in the same manner as in ordinary chancery cases, and enacts that the powers and duties of the appellate court in relation thereto, "shall be the same as are now provided by law in relation to appeals in ordinary chancery cases," it thereby excludes any other mode of review, or rule or course of proceeding on appeal; and the finding of a jury, therefore, in such proceedings, instead of being considered decisive and controlling, as at common law, must be regarded as a mere provisional and assistant inquisition, analogous to a verdict on a feigned issue in a chancery cause.

*Appeals in lien cases:  Practice:  Rulings on the trial.*  In an appeal of this kind, where the proofs are such that the court does not feel the need of the aid of the finding of the jury, but is enabled to turn away from such finding and form a decided opinion for itself, the points made on the rulings at the jury trial, and in charging the jury, etc., will not be considered.

*Mechanics' liens:  Contract relations:  Evidence.*  By this lien law the prescribed contract relation is made a necessary prerequisite, and in proceedings under it to enforce a lien the existence and terms of the contract upon which the alleged lien is based must be distinctly and affirmatively proved.

*Married women:  Mechanics' liens:  Contract relations:  Husband and wife.*  In proceedings to establish such a lien upon the lands of a married woman, by virtue of an alleged implied contract, evidence showing that, at the time the materials for which the lien is sought were furnished, the respondent was living with her husband in the building for the repairing of which the materials were procured, and that the latter, without authority to bind his wife, purchased such materials in his own name and on his own credit, and was individually interested in having the repairs made, not only falls short of establishing any contract relation with respondent, but clearly excludes the existence of such relation.

*Proceedings to enforce mechanics' liens:  Petition:  Respondent's title.*  In setting up the title of the respondent to the lands in the petition in such proceedings, it should be made to appear that the respondent had some interest in the lands at the time the materials were furnished, or when the certificate was filed, and it is not sufficient to set forth only the state of the title at the point of time when the petition is filed.

*Proceedings to establish mechanic's liens:  Decree.*  The final decree in such proceedings, sustaining the lien, ought expressly to adjudge the existence of contract relations between the parties, and the establishment of the alleged lien upon the described property.

*Mechanics' liens:  Statute construed:  Practice.*  Notwithstanding this statute discloses an intent that proceedings under it should be prosecuted in a manner to exempt them from technical refinement, yet, as the remedy looks to a somewhat summary subjection of real property under loose verbal arrangements, and to the passage and founding of titles to land as the result of compulsory pro-

30 MICH.—35.

ceedings, all matters of substance, and every step in any way essential to the security of rights and titles, and the preclusion of future strife and contention, ought to be strictly insisted upon.

*Submitted on briefs July 17.    Decided October 13.*

Appeal from Manistee Circuit.

*Ramsdell & Benedict*, for petitioners.

*S. W. Fowler*, for respondent.

GRAVES, CH. J.

This is a proceeding to enforce a lien under *Comp. L., ch. 215.*

In June, 1873, the appellees filed their petition and alleged that Bridget Magoon was the owner of lot one of block nine of Tyler and Tyson's addition to Manistee; that they had a lien upon the lot for materials they had furnished to Mrs. Magoon to repair the building on it; that the lien existed by reason of an implied contract between petitioners and Mrs. Magoon, not evidenced by writing, and which had for its terms that if petitioners would furnish to her materials in repairing the United States Hotel on the land in question, on her request, by Lorenzo Magoon, her agent, then that she would pay to them the price and value of such materials on demand; that pursuant to the agreement they did furnish Mrs. Magoon such materials as she or her agent ordered, to the value of one hundred and twenty dollars over all credits; that petitioners filed their certificate of lien on the 5th of June, 1873; that when the petition was filed there was due for principal one hundred and twenty dollars over all credits, and that such sum had been due more than six weeks and not to exceed six months. It was then alleged that certain other persons held or claimed to hold some interest in the premises, and the petitioners prayed relief.

Some time after the petition was filed, Mrs. Magoon

filed her answer, in which she denied all the material facts, and especially the making and existence of any contract between herself and the petitioners, and the existence of any arrangement or authority for her husband to obtain of the petitioners any building materials on her credit or account. We gather from the record that after these pleadings the parties proceeded under the sanction of the court to an investigation of the facts before a jury, and that the petitioners sought to establish by evidence the case stated in their petition. An inspection of the papers will preclude every doubt that the hearing was not zealously conducted. A great many questions were agitated, and numerous exceptions taken.

The jury at length returned a verdict for the petitioners, and they likewise reported a number of special findings, made in response to specific submissions preferred at the instance of the respective parties. Following this determination by the jury, the court pronounced a decree ordering a sale of Mrs. Magoon's interest in the lot in case of her failure to pay the amount awarded by the verdict to the petitioners. From this decree Mrs. Magoon appealed to this court, and the return made pursuant to the appeal embraces all the evidence before the court below, the requests and refusals to charge, the charge given, the submissions, for special findings, the verdict and specific findings and the decree, together with a large number of exceptions taken as in a trial at law. The briefs of counsel indicate an expectation that it would be requisite to discuss all the numerous points started in the court below; but that is thought unnecessary. It is easy to imagine that practitioners of the amplest experience might be perplexed in seeking to shape proceedings and formulate questions under the act referred to. But however anomalous or imperfect the law may appear, it must be dealt with, as far as possible, in a way to promote justice and avoid wrong.

In approaching a case of this kind, the first duty of an appellate court is, to try to form some judgment upon

the character and scope of its revising authority, and also upon the principles which ought to regulate its course of investigation.

No distinct consideration of this kind is generally needed in reviewing in any of those actions which belong to the regular and accustomed jurisdiction, because there the bounds of authority, the range of duties, and the pathway of examination, are substantially mapped out beforehand and are presumed to be understood. Here, however, the state of things is wholly different. The case presented is founded, not upon the general or habitual jurisdiction, or fashioned according to the methods peculiar to any of the ancient actions; but is based upon and regulated by a special and unique enactment,—an enactment intended to provide a summary remedy, and at the same time a remedy in which chamber, common-law, and chancery procedure is curiously interwoven.

The nature of the case itself does not distinctly reveal the mode of dealing with it in an appellate court. The proceeding contemplates very important ends. Real estate is to be subjected through it to the burden of a lien in the nature of a mortgage. By means of it titles are to be changed, and titles created. There is, then, the strongest reason, before taking a further step, for looking for some landmarks of jurisdiction.

The right of appeal itself in this class of actions is one which rests upon legislative authority. Neither the inferior, nor the superior tribunal, nor both combined, can give such a right, because it belongs to the extent and limitation of jurisdiction. And where the right is constitutionally given, the lines of jurisdiction and plan of investigation on the part of the appellate court must be first sought in the terms of the law regulating the appeal. If the principle on which it may proceed is distinctly shown, the court cannot lawfully transcend or substantially deviate from it. If required to re-examine a case as on writ of error or *certiorari*, it would not be at liberty to proceed as

upon appeal in equity; and, on the other hand, if required to review as on an appeal in equity, it could not re-examine as on a writ of error or *certiorari.* The general distinction between the methods of reviewing at law and in chancery have always been broad and well settled.

Until quite recently there - was no provision for an appeal to this court from decisions made below under the chapter in question. We so held in *Clark v. Raymond, 26 Mich., 415.* But shortly after that decision, and as we may presume in view of it, the legislature provided for an appeal, and marked out our authority.—*Laws 1873, p. 119.*

It is, then, to this act we must look for the character and scope of the revising power possessed by this court on appeal in these cases; and, on turning to it, we find that the appeal authorized is to be had in "the *same manner* as is provided by law for appeals in *ordinary chancery cases,"* and that "the *power and duties* of the supreme court in *relation to such appeal shall be the same* as are now provided by law in relation to appeals in *ordinary chancery cases."—Laws 1873, p. 119, § 1.* We have here the grant of jurisdiction, and its limitation. When the legislature declared expressly that the "*power and duties"* of the court should be "*the same"* as in ordinary chancery cases, they not only prescribed a rule of action, a line of jurisdiction, a mode of exercising appellate power, but they virtually excluded the adoption of any other rule or course of proceeding on appeal. They distinctly determined that the method and system of review on appeal should be the same as in chancery, and, by consequence, should not be as in cases of common-law cognizance.

In so far, then, as a revision according to the mode thus ordained by the legislature can be reconciled with particular proceedings allowed by the lien law, the way is open for it, and the rule given must be followed. Whether, in consequence of the peculiarities of the statute relating to liens, and of the proceedings which it authorizes, the form and course of review so prescribed may not turn out

to be ineffectual to reach certain questions, or even wholly inapt, in particular cases, is a matter we have no occasion to discuss now. Having reached the conclusion before stated, concerning the power and duty of the court, having ascertained that we are bound to conduct a review according to the mode in chancery, I am led to think, contrary to my first impression, that the jury finding, instead of being considered decisive and controlling, as at common law, must be here regarded as a merely *provisional* and assistant inquisition,—as something strictly analogous to a finding on a feigned issue in chancery. And therefore, however much entitled to respect and credence in a case of doubt or difficulty on the facts, or upon a point specially appropriate for decision by jury, and when no questionable rulings appear to detract from it, yet it must, after all, be held as not *absolutely decisive and binding*. Such was the view taken by this court, upon reason and the weight of authority, of a jury finding in equity, in *Dunn v. Dunn, 11 Mich., 284.* And it being thus clearly and distinctly established that a verdict given in chancery could not bind the court, the legislature, when regulating our course on appeals in these cases where verdicts are provided for and contemplated, expressly enacted that the power and duties of the court should be the same as in ordinary chancery cases.

There is, then, very strong reason for maintaining that the legislature designed that the court, in the exercise of its appellate power in these cases, should consider jury findings in the same way in which such findings are entitled to be regarded in chancery, and hence in the way explained in *Dunn v. Dunn.* If correct in this estimate of the value and influence of a finding, it would seem to follow that the relative importance of the points on rulings given during the trial held to reach that finding, must practically depend on the degree of need experienced for a finding as a help in disposing of the case, and on the degree of weight which a valid finding would be naturally and regularly entitled

to; and if the course of review not only may be, but must be "the same as in ordinary chancery cases," and if the legal evidence is such that the court can turn away from the finding and form a decided opinion for itself, it would be a vain and inexcusable course to dwell upon the points made on the trial, and send the case back on account of some error in charging, or the like.

And such, it appears to me, is the predicament of the present case. We have before us the whole evidence, and no view is open to any objections which appear to have been made to it which can effect the result. The petitioners make no point against the admission or upon the exclusion of evidence, and the objections by the defendant are not important. If any of the rulings she complains of, in relation to the admission of testimony, were not accurate, a point not decided, she was not prejudiced by them. Reading the evidence as it stands reported, I cannot think there is any difficulty whatever in forming a judgment upon it. On no fair construction can it be considered as affording satisfactory grounds for finding the existence of a lien on any interest of Mrs. Magoon.

The petition counted on that provision of the lien law which requires, as a condition of the right to a lien, that there should be an implied contract between the claimant of the right of lien and the lienor, or the party whose property is intended to be subjected to the lien.

The prescribed contract relation is necessarily a prerequisite, and it must positively and distinctly exist before, or at all events at the time when the lien is sought to be instituted; because, in truth, the contract is one of the chief facts which originate the lien. The evidence contained in this record, on fair consideration, not only falls short of showing any contract relation between these parties touching the building materials, but rather tends to exclude the existence of such relation. It is true, there are some expressions which if separated from the rest, and taken literally and broadly, and some vague statements of

hearsay and opinion, which, if of any force, would favor a different view. But these matters, in so far as they are entitled to be regarded as evidence at all, are fully explained and controlled by other statements. Mrs. Magoon and her husband were living in the building. It was a tavern, and had been injured by a recent fire. The husband was having the use of it, and he bought the articles for repairing the building in his own name, and on his own credit, and the petitioners charged them to him. There was no understanding that the goods were to be on her credit, or for her benefit, and no privity of contract subsisted between her and the petitioners.

They sought to show on the trial that, in fact, when the goods were obtained, her husband was her general agent, and that he acted in that character in getting the articles. But the evidence was wholly insufficient. The whole drift of the valid proof went to establish that the husband was individually interested in having the repairs made; that, as between himself and his wife, she was not to be responsible; that he, personally, and on his own account, procured the articles of the petitioners, and that they supplied them to him on his credit, and not on that of his wife, or of her estate.

It would be tedious to refer to all the items of proof, and it is quite unnecessary to attempt it. The evidence, certainly, I think, does not show any contract relation in regard to the building materials in question between these parties when the certificate was filed, or theretofore, and hence there was no foundation for a lien as against the defendant, no matter what the abstract equities were. In short, Mrs. Magoon did not personally become *contractor* or *contractee,* and there was nothing vicarious in the transaction between her husband and petitioners.—*Bartholomew v. Jackson, 20 J. R., 28; Whiting v. Sullivan, 7 Mass., 107; Mills v. Wyman, 3 Pick., 207; McGilvery v. Capen, 7 Gray, 523; Hollingsworth v. Dow, 19 Pick., 228; Globe Works v. Wright, 106 Mass., 207; Hayes v. Fessenden, id.,*

*228 ; Leggat v. Reed, 1 Car. & P., 16 ; Bentley v. Griffin, 5 Taunton, 356 ; Benton v. Wickwire, 54 N. Y., 226 ; Muldoon v. Pitt, id., 269 ; Knapp v. Brown, 45 N. Y., 207 ; Sexton v. Wheat, 8 Wheat., 229 ; Powers v. Russell, 26 Mich., 179 ; Emery v. Lord, id., 431.* The last case is very strong.

Before dismissing the case, it may be well to advert to two among several peculiarities apparent in the record. The *first* is that the petition, in describing the defendant's interest in the realty, and· the time when it subsisted, referred her ownership to the point of time when the petition was filed, and not to any earlier time when the contract was said to have been made, or even when the certificate was executed or put on file.

The *second* is, that the final decree does not clearly purport, if at all, to adjudge that there was any contract relation between the parties, or that any lien whatever was established or existed. It narrates the jury finding and some other facts, and then, without any distinct declaration showing an exercise of judgment by the court respecting the existence of a contract relation or lien as alleged in the petition, passes to the ordering part, and directs a sale of defendant's interest unless payment should be made. We have no occasion now to do more than call attention to these incidents. It is undoubtedly true that the legislature intended that actions under the statute in question should be prosecuted in a manner to exempt them from technical refinements; but when we consider that the remedy looks to a somewhat summary subjection of real property under loose verbal arrangements, and to the passage and founding of titles to land as the result of compulsory proceedings, it appears too clear to be disputed, that all matters of substance, and every step in any way essential to the security of rights, and titles and the preclusion of future strife and contention, ought to be strictly insisted on.

Without dwelling further on the case, or suggesting

other difficulties, I am of opinion that the decree below ought to be reversed, with costs, and the petition dismissed.

The other Justices concurred.