# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

RONNISCH CONSTRUCTION GROUP, INC v LOFTS ON THE NINE, LLC

Docket No. 150029. Argued November 5, 2015 (Calendar No. 4). Decided July 26, 2016.

Ronnisch Construction Group, Inc. (Ronnisch), brought an action in the Oakland Circuit Court against Lofts on the Nine, LLC (LOTN), and others, alleging breach of contract and unjust enrichment and seeking foreclosure of a lien. The contract between Ronnisch and LOTN involved the construction of a condominium building in Ferndale, Michigan, and required that any claim arising out of or related to the contract be submitted to arbitration. Because of a deficiency in payment, Ronnisch had filed a claim of lien under the Construction Lien Act (CLA), MCL 570.1101 *et seq*., with the Oakland County Register of Deeds. The parties agreed to a stay of the proceedings in the circuit court and proceeded with arbitration, during which LOTN asserted claims of its own related to faulty or incomplete work. The arbitrator awarded damages to both Ronnisch and LOTN, resulting in a net award to Ronnisch. LOTN paid Ronnisch the net award amount plus interest. Ronnisch then moved the circuit court for confirmation of the arbitration award and sought attorney fees and costs under MCL 570.1118(2) of the CLA. LOTN argued that Ronnisch's motion should be denied because LOTN had already satisfied the arbitration award by paying Ronnisch and that no attorney fees were warranted because once Ronnisch's breach-of-contract claim had been satisfied, its lien foreclosure claim became moot. The circuit court, Shalina Kumar, J., denied Ronnisch's motion. With respect to attorney fees, the circuit court held that because LOTN had paid Ronnisch the amount owed under the arbitration award and neither the circuit court nor the arbitrator had adjudicated Ronnisch's lien foreclosure claim, Ronnisch was not a prevailing lien claimant and the circuit court did not have discretion to award Ronnisch attorney fees and costs under the CLA. Ronnisch appealed. The Court of Appeals, JANSEN, P.J., and SAAD and DONOFRIO, JJ., vacated that portion of the circuit court order concerning attorney fees and remanded the case, determining that Ronnisch was a prevailing party under the CLA and that the circuit court had discretion to award Ronnisch attorney fees. 306 Mich App 203 (2014). The Supreme Court granted LOTN's application for leave to appeal. 497 Mich 1003 (2015).

In an opinion by Justice VIVIANO, joined by Justices MARKMAN, MCCORMACK, and BERNSTEIN, the Supreme Court *held*:

MCL 570.1118(2) of the CLA provides that in an action to enforce a construction lien through foreclosure, the court may allow reasonable attorney fees to a lien claimant who is the

prevailing party.  A party may be awarded reasonable attorney fees if it prevails in arbitration on a related contract claim brought in the same action as its lien foreclosure claim and if it was a lien claimant under the CLA when it became the prevailing party.  In this case, the circuit court had discretion to award attorney fees to Ronnisch because Ronnisch was a lien claimant who prevailed in an action to enforce a construction lien through foreclosure.

1.    Under MCL 570.1118(2), in an action to enforce a construction lien through foreclosure, the court shall examine each claim and defense that is presented and determine the amount, if any, due to each lien claimant or to any mortgagee or holder of an encumbrance and their respective priorities.  The court may allow reasonable attorney fees to a lien claimant who is the prevailing party.  MCL 570.1105(2) defines "lien claimant" as a person having a right to a construction lien under the CLA.  Ronnisch had a valid claim of lien that attached to LOTN's interest in the property.   Further, it is undisputed that LOTN did not tender full payment to Ronnisch on the contract amount before the arbitration award.  Therefore, when Ronnisch received its arbitration award, it was a lien claimant because it possessed a right to a construction lien under the CLA.  The fact that Ronnisch was not determined to be a lien claimant before the arbitration award was not dispositive.  Instead, the material inquiry was whether Ronnisch, as the party seeking fees, was a lien claimant under the CLA when it became the prevailing party by virtue of the arbitration award in its favor.

2.    The plain language of MCL 570.1118(2) does not expressly limit the trial court's ability to award attorney fees to a lien claimant who is the prevailing party on the lien claim.  Rather, reading the statute as a whole makes clear that a lien claimant who is the prevailing party may seek attorney fees in an action to enforce a construction lien through foreclosure.  In MCL 570.1118(2) the phrase "action to enforce a construction lien through foreclosure" refers to a civil judicial proceeding in which foreclosure of a construction lien is sought, and it is comprised of all the claims asserted in the action, including any related claim for breach of contract.  By beginning with the phrase "[i]n an action to enforce a construction lien through foreclosure," MCL 570.118(2) establishes that the focus is on whether the lien claimant is a prevailing party in the action (i.e., the entirety of the judicial proceeding) in which the lien foreclosure claim was asserted.  There is no indication from the language of MCL 570.1118(2) that the lien claimant must receive a judgment on its foreclosure claim for it to be the prevailing party.  The Legislature directed the trial court to examine each claim and defense that is presented and determine the amount, if any, due to each lien claimant.  Consistently with this directive, a lien claimant in such an action might prevail on its related breach of contract claim and receive the entire amount to which it is entitled under its lien claim.  Under Michigan law, a lien foreclosure claim and a claim for breach of the underlying contract are integrally related.  A contract is a necessary prerequisite to a construction lien.   A construction lien stems from the underlying contract, and its amount is determined by the contract's terms.  These principles are reflected throughout the CLA.  In essence, the lien is but a means for enforcing the payment of the debt arising from the performance of the contract.  A party may proceed to enforce its lien through foreclosure while simultaneously seeking recovery based on the contract from which the lien arose.  But there can only be one satisfaction.  Thus, a lien foreclosure claim and a claim for breach of the underlying contract are integrally related and allowing a party to pursue both merely gives the party a better chance of recovering what it is owed.

3. A "prevailing party" is the party to a suit who successfully prosecutes the action, prevailing on the main issue, even though not necessarily to the extent of the party's original contention. The prevailing party is the one in whose favor the decision or verdict is rendered and judgment entered. For there to be a prevailing party, there must have been a material and enforceable alteration of the legal relationship of the parties resulting from judicial imprimatur. In this case, Ronnisch received an award on its contract claim pursuant to a final and binding arbitration. This award constituted a conclusive determination of the rights and obligations of the parties. That is, the arbitration produced an enforceable award that altered the legal relationship of the parties. Moreover, through the arbitration award, Ronnisch prevailed on the main issue in the action, i.e., it obtained an enforceable award compensating it for its labor and materials. Under the CLA, a lien claimant becomes the prevailing party when the rights and obligations of the parties that are at the heart of its lien claim are conclusively determined in its favor. Ronnisch's contract and lien foreclosure claims both sought to obtain payment for the labor and materials supplied by Ronnisch, and both claims necessarily required determinations to be made regarding the parties' rights and obligations stemming from the underlying contract. By prevailing on one of those claims—the contract claim—Ronnisch successfully prosecuted the action, receiving the requisite conclusive determination and thereby prevailing on its main issue.

4. That the circuit court never entered a judgment confirming the arbitration award did not preclude the Michigan Supreme Court from determining that Ronnisch was the prevailing party. The lack of judicial imprimatur in Ronnisch's favor was a direct result of the circuit court's failure to confirm Ronnisch's arbitration award upon its motion. Contrary to the circuit court's conclusion, LOTN's payment of the arbitration award did not obviate the need to confirm the award. In certain circumstances, confirmation may be necessary even if the award has been satisfied, as in the instant case, when a party seeks attorney fees. A party cannot avoid confirmation by paying an arbitration award before the confirmation proceeding. Therefore, LOTN's payment of the arbitration award should not have precluded the circuit court from providing the necessary judicial imprimatur in this case by confirming the award. Ronnisch was entitled to seek attorney fees under the CLA because it prevailed on the main issue in its construction lien action when it received a favorable arbitration award on its contract claim. The arbitration award constituted a conclusive and enforceable determination of the rights and obligations of the parties that were at the heart of Ronnisch's lien claim. Therefore, Ronnisch was the prevailing party in its action to enforce a construction lien through foreclosure.

Affirmed. Case remanded to the circuit court for further proceedings.

Chief Justice YOUNG, joined by Justices ZAHRA and LARSEN, dissenting, concluded that recovery of attorney fees under the CLA is permitted only to those parties who prevail on a construction lien. Under MCL 570.1118(2), the court may allow reasonable attorney fees to a lien claimant who is the prevailing party. The term "lien claimant" is statutorily defined as a person having a right to a construction lien under the CLA. Grammatically, this requires that the claimant have a present, not a previous or theoretical, right to a lien at the time the claimant is the prevailing party. Additionally, MCL 570.1107(1) states that a lien cannot exceed the amount of the lien claimant's contract less payments made on the contract. In this case, the circuit court determined that Ronnisch had prevailed only on its contract claim, not its lien foreclosure claim. Ronnisch received and accepted full payment for all its damages incurred under the contract. By

doing so, Ronnisch extinguished any claimed lien. The majority opinion simply fails to acknowledge that Ronnisch was never more than a presumptive lien claimant that extinguished its lien before the validity of its lien claim was ever determined. Before the acceptance of the payment, there had never been any determination that Ronnisch was a valid lien claimant—that is, whether Ronnisch had a right to a construction lien. And after Ronnisch accepted the payment, there was no more debt on which any lien could be based. Accordingly, when Ronnisch moved in the circuit court for an award of attorney fees, it was no longer a person having a right to a construction lien under the CLA. The effect of the majority's construction of the CLA is to undercut the lien foreclosure statutory process and attorney fees remedy entirely to permit the recovery of attorney fees based on a simple common-law contract claim. It is doubtful that the Legislature created an unnecessary lien foreclosure process with the intention of establishing a new route to recover attorney fees for an existing common-law contract claim. In purporting to construe the CLA, the majority has converted a statutory attorney fees remedy requiring prevailing on a lien foreclosure action into one in which prevailing on the main issue of the lawsuit is sufficient, but there is no textual support for an attorney fees remedy under the CLA by prevailing on the main issue. Because Ronnisch did not meet the statutory definition of "lien claimant" under the CLA, and because it voluntarily extinguished its lien claim before the circuit court could have determined that it was a lien claimant, Ronnisch was not entitled to attorney fees, and Chief Justice YOUNG would have reversed the Court of Appeals on that issue.

©2016 State of Michigan

# OPINION

Chief Justice:                  Justices:
Robert P. Young, Jr.   Stephen J. Markman
                                       Brian K. Zahra
                                       Bridget M. McCormack
                                       David F. Viviano
                                       Richard H. Bernstein
                                       Joan L. Larsen

FILED  July 26, 2016

STATE OF MICHIGAN

SUPREME COURT

RONNISCH CONSTRUCTION GROUP,
INC.,

        Plaintiff-Appellee,

v                                                                    No. 150029

LOFTS ON THE NINE, LLC,

        Defendant-Appellant,
and

LOFTS ON THE NINE CONDOMINIUM
ASSOCIATION, HOTLINE ELECTRIC, INC.,
RAM CONSTRUCTION SERVICES OF
MICHIGAN, INC., EAM ENGINEERS, INC.,
MICHIGAN AIR PRODUCTS CO., STOCK
BUILDING SUPPLY, LLC, WILLIAMS
DISTRIBUTING CO., NORTH STAR
PARTNERS, LLC, and THE STATE BANK,

        Defendants.

BEFORE THE ENTIRE BENCH

VIVIANO, J.

At issue in this case is whether plaintiff, Ronnisch Construction Group (RCG), can seek attorney fees under § 118(2), MCL 570.1118(2), of the Construction Lien Act (CLA) from defendant Lofts on the Nine, LLC (LOTN),[1] given that plaintiff received a favorable arbitration award on its related breach of contract claim but did not obtain a judgment on its construction lien claim. We hold that the trial court may award attorney fees to RCG because RCG was a lien claimant who prevailed in an action to enforce a construction lien through foreclosure. Therefore, we affirm the judgment of the Court of Appeals and remand to the trial court for further proceedings not inconsistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

On May 25, 2007, RCG entered into a construction contract with LOTN to construct a condominium building. RCG last provided labor and materials on April 24, 2009. LOTN withheld payment of a portion of the contract amount, maintaining that RCG breached the contract by providing defective construction, dishonestly charging LOTN, and failing to complete the project on time. On June 2, 2009, RCG recorded its Claim of Lien, claiming a construction lien in the amount of $626,163.73, subject to interest on late payments in accordance with the contract. RCG also filed a notice of lis pendens against the subject property.

---

[1] MCL 570.1101 *et seq*. Before enactment of the CLA in 1980, its predecessor, the Mechanics' Lien Act, former MCL 570.1 *et seq*., governed construction liens in Michigan.

On November 25, 2009, RCG filed this suit against LOTN, seeking foreclosure of the lien and raising claims for breach of contract and unjust enrichment.[2] RCG sought a judgment in the amount of $626,163.73, together with interest, costs, and attorney fees. However, the parties agreed to stay the proceedings to pursue contractually mandated arbitration. Following arbitration, the arbitrator awarded $636,058.72 to RCG and awarded $185,238.36 to LOTN on its recoupment defense and counterclaims, resulting in a net award of $450,820.36 in RCG's favor. The arbitrator did not address RCG's claim for attorney fees and costs and instead reserved the issue for the trial court.

A few weeks later, LOTN paid the arbitration award in full. Thereafter, RCG filed a motion requesting that the trial court lift the stay of proceedings, confirm the arbitration award, and award RCG its actual attorney fees and costs under § 118(2). The trial court denied RCG's motion, determining that RCG's lien foreclosure claim had not been adjudicated by the arbitrator or the trial court and that RCG's lien was satisfied when it voluntarily accepted LOTN's tender of payment. Thus, the trial court held that RCG was not a prevailing lien claimant under the CLA, a necessary predicate to the recovery of attorney fees under § 118(2), and that the court therefore did not have the discretion to award attorney fees to RCG.

On appeal, the Court of Appeals vacated the portion of the trial court's order denying RCG's request for attorney fees and remanded for further proceedings.[3] The

---

[2] RCG's unjust enrichment claim is not at issue in this appeal.

[3] *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 306 Mich App 203, 214; 854 NW2d 744 (2014).

3

Court of Appeals held that, having brought both a contract claim and a foreclosure of lien claim, the fact that RCG "substantially prevail[ed] on the amounts it sought under the claim of lien made it a prevailing party" under the CLA.[4]  The Court of Appeals also distingushed this Court's order in *H A Smith Lumber & Hardware Co v Decina*,[5] noting that, unlike the instant case, the subcontractors in *Decina* did not prevail on their lien claims because their liens could not legally attach to the property.[6]  Accordingly, the Court of Appeals concluded that the trial court had discretion under § 118(2) to award attorney fees.[7]

LOTN sought leave to appeal in this Court.  We granted leave to appeal, asking the parties to address:

> whether the Court of Appeals erred in holding that the plaintiff contractor, who filed a claim of lien under the Construction Lien Act (CLA), MCL 570.1101 et seq., and then filed a circuit court action against the defendant property owner, alleging breach of contract, foreclosure of lien, and unjust enrichment claims, was entitled to an award of attorney fees as a "prevailing party" under MCL 570.1118(2), when the plaintiff prevailed in binding arbitration on its contract claim, but neither the arbitrator nor the circuit court resolved the plaintiff's foreclosure of lien claim. See *HA Smith Lumber & Hardware Co v Decina*, 480 Mich 987 (2007).[8]

---

[4] *Id*. at 211.

[5] *H A Smith Lumber & Hardware Co v Decina*, 480 Mich 987 (2007).

[6] *Ronnisch*, 306 Mich App at 213.

[7] *Id*. at 211.

[8] *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 497 Mich 1003 (2015).

4

## II. STANDARD OF REVIEW

We review a trial court's award of attorney fees and costs for an abuse of discretion.[9] An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes.[10] A trial court necessarily abuses its discretion when it makes an error of law.[11]

Questions of statutory interpretation are reviewed de novo.[12] In interpreting § 118(2), our goal is to give effect to the Legislature's intent, focusing first on the statute's plain language.[13] In doing so, we examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme.[14] When a statute's language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written.[15]

## III. ANALYSIS

The CLA is "intended to protect the interests of contractors, workers, and suppliers through construction liens, while protecting owners from excessive costs."[16]

---

[9] *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008).

[10] *Id.*

[11] *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

[12] *Madugula v Taub*, 496 Mich 685, 695; 853 NW2d 75 (2014).

[13] *Id.* at 696.

[14] *Id.*

[15] *Id.*

[16] *Vugterveen Sys, Inc v Olde Millpond Corp*, 454 Mich 119, 121; 560 NW2d 43 (1997); see also 1980 PA 497, title (stating that the CLA is an act "to establish, protect, and

The fundamental purpose of the CLA with respect to contractors, workers, and suppliers is to provide a method to secure payment for their labor and materials.[17] The Legislature has declared that the CLA is "a remedial statute . . . [that] shall be liberally construed to secure the beneficial results, intents, and purposes of th[e] act."[18] Accordingly, when interpreting the CLA, we should always be mindful of the CLA's intended purpose.[19]

In this case, RCG sued to recover the unpaid amount on its contract and, after receiving a favorable arbitration award, sought attorney fees under § 118(2) of the CLA, which reads in pertinent part:

enforce by lien the rights of persons performing labor or providing material or equipment for the improvement of real property").

[17] See *Smalley v Gearing*, 121 Mich 190, 198; 79 NW 1114 (1899) (stating that the Mechanics' Lien Act "provide[d] a method for securing payment to those whose labor or material goes into the building . . . ."). That the CLA is designed to protect the interests of such parties is further supported by the substantial-compliance provision contained in the act. See MCL 570.1302(1).

[18] MCL 570.1302(1). This provision, like its predecessor in the Mechanics' Lien Act, former MCL 570.27, codifies the longstanding principle that construction lien statutes must be liberally construed to effectuate their purpose. See *Scales v Griffin*, 2 Doug 54, 59 (Mich, 1845). We agree with the dissent that a "provision requiring that a statute be liberally construed 'should be regarded as requiring a fair interpretation as opposed to a strict or crabbed one—which is what courts are supposed to provide anyway.' " *Ante* at 5 n 12, quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St Paul: Thomson/West, 2012), p 233. We disagree that merely citing such a directive—like the dissent's author did recently in *Associated Builders & Contractors v Lansing*, 499 Mich 177; ___ NW2d ___ (2016)—implies otherwise. Notably, it is this very principle—fairly interpreting the text of the statute at issue—that impels us to reject the dissent's "crabbed" interpretation of the statute.

[19] *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park*, 400 Mich 184, 188; 253 NW2d 646 (1977).

In an action to enforce a construction lien through foreclosure, the court shall examine each claim and defense that is presented and determine the amount, if any, due to each lien claimant or to any mortgagee or holder of an encumbrance and their respective priorities. The court may allow reasonable attorneys' fees to a lien claimant who is the prevailing party.[20]

Application of § 118(2) in this case requires us to determine whether RCG was (1) a lien claimant, (2) in an action to enforce a construction lien through foreclosure, (3) who was the prevailing party.

## A. RCG WAS A LIEN CLAIMANT

The first inquiry in determining whether a party may seek attorney fees under the CLA is whether the party is a lien claimant. Under § 118(2), the trial court has discretion to award attorney fees to "a lien claimant who is the prevailing party." The CLA defines a "lien claimant" as "a person having a right to a construction lien under [the] act."[21] RCG had a valid claim of lien that attached to LOTN's interest in the property.[22] Further,

---

[20] Additionally, the statute provides that a court may allow reasonable attorney fees to a prevailing defendant if the court determines that the lien claimant's action to enforce a construction lien was vexatious. MCL 570.1118(2).

[21] MCL 570.1105(2).

[22] RCG's construction lien on LOTN's interest in the condominium building arose once it made improvements to the condominium building. MCL 570.1107(1). That lien attached to LOTN's entire interest. MCL 570.1107(2). RCG properly filed its claim of lien in the amount of $626,163.73 within 90 days after it last furnished labor or material, and its lien was properly recorded on June 2, 2009. See MCL 570.1111(1). Therefore, we agree with the trial court's determination that RCG perfected its lien. However, if a lien claim has not been adjudicated when a dispositive ruling on the underlying contract claim is made, and questions regarding the validity of a plaintiff's lien remain, they can be resolved in conjunction with a motion to award attorney fees. The plaintiff then would still have the burden to prove the validity of the lien. See *Skyhook Lift-Slab Corp v Huron Towers, Inc*, 369 Mich 36, 39; 118 NW2d 961 (1963) (stating the plaintiff bears the burden of demonstrating compliance with the statutory requirements necessary for a lien claim); *In re Eddy Estate*, 354 Mich 334, 348; 92 NW2d 458 (1958) (recognizing

7

it is undisputed that LOTN did not tender full payment to RCG on the contract amount before the arbitration award. Therefore, when RCG received its arbitration award, it was a lien claimant because it possessed "a right to a construction lien" under the CLA.[23]

Our conclusion that RCG was a lien claimant makes the instant case distinguishable from this Court's order in *Decina*. LOTN's argument that *Decina* controls the outcome of this case overlooks the crucial distinction between the two— RCG was a lien claimant under § 118(2) when it received a favorable determination on its contract claim whereas the subcontractors in *Decina* were not.

The litigation in *Decina* stemmed from a construction contract dispute between homeowners, their general contractor, and two subcontractors.[24] The dispute arose after the homeowners withheld final payment to the general contractor and after the general contractor did not pay the subcontractors for the labor and materials they provided.[25]

_____

that the party seeking attorney fees bears the burden of proving entitlement to those fees).

[23] MCL 570.1105(2). The fact that RCG was not determined to be a lien claimant before the arbitration award is not dispositive. Instead, the material inquiry is whether RCG, as the party seeking fees, was a lien claimant under the CLA *when it became the prevailing party* by virtue of the arbitration award in its favor. Contrary to the dissent's view, we do not believe that whether RCG was a lien claimant at that critical moment is contingent on a prior or contemporaneous judicial determination that it had a right to a lien. It is ironic that in an opinion that claims a monopoly on the statutory text, the dissent hinges its analysis on a requirement that is nowhere to be found in the text of the CLA. See MCL 570.1105(2) (defining "lien claimant" as "a person having a right to a construction lien under this act.").

[24] *H A Smith Lumber & Hardware Co v Decina*, 258 Mich App 419, 421-422; 670 NW2d 729 (2003), vacated in part 471 Mich 925 (2004). The subcontractors contracted with the general contractor to provide materials and labor. *Decina*, 258 Mich App at 422.

[25] *Id*.

Pertinent to this case, the subcontractors brought lien foreclosure claims against the homeowners and breach of contract claims against the general contractor.[26]

Following a bench trial, the trial court ruled that the homeowners had paid the entire contract amount to the general contractor and that the subcontractors' liens therefore did not attach to the property because the homeowners had paid the contract amount in full.[27] But the trial court ruled in favor of the subcontractors on their breach of contract claims and subsequently ordered the general contractor to pay their attorney fees.[28] The Court of Appeals affirmed, holding that the subcontractors were a prevailing party because they had prevailed on "a claim brought in the alternative for the same injury or loss raised in the CLA claim."[29]

This Court reversed by order and vacated the trial court's order granting attorney fees. This Court stated that to be a "prevailing party" under § 118(2), the party "must prevail on the lien foreclosure action."[30] This Court then held that the subcontractors lost on their lien claim and therefore could not recover attorney fees, stating:

---

[26] *Id.* at 423. Although the subcontractors did not contract with the homeowners directly, they were nevertheless at least initially entitled to a construction lien under the CLA. See MCL 570.1107(1) ("Each . . . subcontractor . . . who provides an improvement to real property has a construction lien upon the interest of the owner or lessee who contracted for the improvement to real property . . . .").

[27] *H A Smith Lumber & Hardware Co v Decina (On Remand)*, 265 Mich App 380, 382; 695 NW2d 347 (2005), rev'd 480 Mich 987 (2007).

[28] *Id.*

[29] *Id.* at 384-385.

[30] *Decina*, 480 Mich at 988.

In this case, the unpaid subcontractors filed a lien foreclosure action against the property owners and a breach of contract action against the general contractor. The subcontractors lost on their lien claim but prevailed on the breach of contract claim. While the statute allows a lien claimant to bring an underlying contract action at the same time as the lien foreclosure action, it does not preclude the option of bringing the two actions separately. MCL 570.1117(5). If the subcontractors had chosen to bring their breach of contract claims against the general contractor as a separate action, they would not have been allowed to recover attorney fees. The language of MCL 570.1118(2) does not permit recovery of attorney fees on the contract action merely because it was brought together with the lien foreclosure action.[31]

As noted earlier, the crucial distinction between *Decina* and the instant case is that the subcontractors in *Decina* were not lien claimants. In *Decina*, the trial court found that the homeowners had paid the entire contract amount owed to the general contractor.[32] The homeowners' tender of full payment extinguished the subcontractors' right to a construction lien under the CLA.[33] Accordingly, this Court rightly acknowledged that the subcontractors lost on their lien claims.[34] Therefore, the *Decina* subcontractors no longer had "a right to a construction lien under [the CLA]" and thus could no longer be considered "lien claimants."[35] The rule that emerges from *Decina* is simple—a party cannot lose on its lien claim and receive attorney fees under § 118(2). As a result, the

---

[31] *Id*.

[32] *Decina*, 258 Mich App at 424, 431.

[33] See MCL 570.1107(1) and (6); see also *Vugterveen*, 454 Mich at 129 (recognizing that MCL 570.1107(6) provides a real property owner with a defense to a claim of lien if the owner can show that the sum of payments made pursuant to the specific contract plus the claim of lien exceed the price of the contract).

[34] *Decina*, 480 Mich at 988.

[35] MCL 570.1105(2).

subcontractors in *Decina* could not seek attorney fees under § 118(2) because fees under that section may only be awarded to "a *lien claimant* who is the prevailing party."[36]

Accordingly, *Decina* does not control the outcome of this case. In contrast to the subcontractors in *Decina*, RCG was a lien claimant when it received its arbitration award because it possessed "a right to a construction lien" under the CLA.[37]

## B. RCG BROUGHT AN ACTION TO ENFORCE A CONSTRUCTION LIEN THROUGH FORECLOSURE

We next turn to whether RCG was the prevailing party in an *action to enforce a construction lien through foreclosure*, when its lien claim was not adjudicated but it prevailed on its related contract claim. We conclude that the plain language of § 118(2) does not expressly limit the trial court's ability to award attorney fees to a lien claimant who is the prevailing party *on the lien claim*. Rather, reading the statute as a whole makes clear that a "lien claimant who is the prevailing party" may seek attorney fees "[i]n an *action* to enforce a construction lien through foreclosure . . . ."[38]

The language of § 118(2) indicates that the Legislature was aware that an action to enforce a construction lien through foreclosure may involve multiple, separate claims. The first sentence of § 118(2) reads, "In *an action to enforce a construction lien through*

---

[36] MCL 570.1118(2) (emphasis added). Accordingly, this Court correctly recognized that § 118(2) did "not permit recovery of attorney fees on the contract action merely because it was brought together with the lien foreclosure action." *Decina*, 480 Mich at 988. Put simply, bringing lien foreclosure and contract claims in the same action did not allow the *Decina* subcontractors to evade the lien claimant requirement.

[37] MCL 570.1105(2).

[38] MCL 570.1118(2).

*foreclosure*, the court shall examine *each claim* and defense that is presented and determine the amount, if any, due to each lien claimant or to any mortgagee or holder of an encumbrance and their respective priorities."[39] We presume the Legislature knew the meaning of the words it used when drafting this provision.[40] And, here, the Legislature used the terms "action" and "claim" in the same sentence. An "action" is "[a] civil or criminal judicial proceeding."[41] "A party bringing an 'action' seeks to recover from the opposing party . . . ."[42] On the other hand, "a claim consists of facts giving rise to a right asserted in a judicial proceeding, which is an action. In other words, the action encompasses the claims asserted."[43] Accordingly, in § 118(2), the phrase "action to

---

[39] Emphasis added. The Legislature's understanding that separate claims could be brought in the foreclosure action is also reflected elsewhere in the CLA. See MCL 570.1117(5) ("In connection with an action for foreclosure of a construction lien, the lien claimant also may maintain an action on any contract from which the lien arose.").

[40] *Auditor General v McLaulin*, 83 Mich 352, 354; 47 NW 233 (1890).

[41] *Black's Law Dictionary* (10th ed). To understand the meaning of words in a statute that are not otherwise defined, we may resort to dictionary definitions for guidance. *People v Jones*, 467 Mich 301, 304; 651 NW2d 906 (2002). Because the terms at issue in this case have a peculiar legal meaning, it is appropriate to consult a legal dictionary. *Id.* at 304-305. See also MCL 8.3a.

[42] *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 530; 872 NW2d 412 (2015).

[43] *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 555; 640 NW2d 256 (2002). *Black's Law Dictionary* (10th ed) defines "claim" as:

> **1.** A statement that something yet to be proved is true . . . . **2.** The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional . . . . **3.** A demand for money, property, or a legal remedy to which one asserts a right; [especially], the part of a complaint in a civil action specifying what relief the plaintiff asks for.

enforce a construction lien through foreclosure" refers to a civil judicial proceeding in which foreclosure of a construction lien is sought, and it is comprised of all the claims asserted in the action, including any related claim for breach of contract.[44] By beginning with the phrase "[i]n an action to enforce a construction lien through foreclosure," § 118(2) establishes that the focus is on whether the lien claimant is a prevailing party in the action (i.e., the entirety of the judicial proceeding) in which the lien foreclosure claim was asserted.[45]

There is no indication from the language of § 118(2) that the lien claimant must receive a judgment on its foreclosure claim for it to be the prevailing party. The Legislature directed the trial court to "examine *each claim* and defense that is presented

---

[44] Some of the confusion underlying the proper interpretation of § 118(2) may stem from the fact that "action" and "cause of action," i.e., a claim, are often used synonymously, although they do not strictly and technically have the same meaning. *Otto v Village of Highland Park*, 204 Mich 74, 80; 169 NW 904 (1918). For instance, in MCL 570.1117(5), the Legislature used "action" to refer both to a judicial proceeding and to a claim that may be asserted within that proceeding. In such circumstances, we must be careful to look for contextual clues in discerning the meaning of the words in the statute.

In *Decina*, this Court correctly noted that under § 118(2), the party must prevail on the lien foreclosure action which, under the plain language of § 118(2), refers to a judicial proceeding. But, perhaps influenced by the inartful drafting of the CLA, the *Decina* Court also used the terms "action" and "claim" interchangeably. See, e.g., *Decina*, 480 Mich at 988 ("The subcontractors lost on their lien claim but prevailed on the breach of contract claim. While the statute allows a lien claimant to bring an underlying contract action at the same time as the lien foreclosure action, it does not preclude the option of bringing the two actions separately."). Nevertheless, despite this confusion, the rule emerging from *Decina* is clear—a party that lost on its lien claim cannot receive attorney fees under § 118(2).

[45] In interpreting statutes, "words and clauses will not be divorced from those which precede and those which follow." *Sanchick v State Bd of Optometry*, 342 Mich 555, 559; 70 NW2d 757 (1955).

and determine the amount, if any, due to each lien claimant . . . ."[46] Consistent with this directive, a lien claimant in such an action might prevail on its related breach of contract claim and receive the entire amount to which it is entitled under its lien claim. In that scenario, the lien claimant would have prevailed in its *action* to enforce the construction lien, despite not winning its specific lien foreclosure claim and, thus, would be entitled to attorney fees under § 118(2).[47]

Under Michigan law, a lien foreclosure claim and a claim for breach of the underlying contract are integrally related. A contract is a necessary prerequisite to a construction lien.[48] A construction lien stems from the underlying contract,[49] and its amount is determined by the contract's terms.[50] These principles are reflected throughout the CLA.[51] In essence, "[t]he lien is but a means for enforcing the payment of the debt

---

[46] MCL 570.1118(2) (emphasis added).

[47] As explained later in this opinion, this is because the lien claimant will have used the CLA to achieve its main objective in filing suit, i.e., to obtain payment for its labor or materials.

[48] See *Willard v Magoon*, 30 Mich 273, 279 (1874).

[49] See *Canvasser Custom Builders, Inc v Seskin*, 38 Mich App 643, 647-648; 196 NW2d 859 (1972).

[50] *Erb Lumber Co v Homeowner Constr Lien Recovery Fund*, 206 Mich App 716, 722; 522 NW2d 917 (1994).

[51] For example, in order to enter a judgment of foreclosure, the court must find that the amount adjudged to be due on the contract has not been paid. MCL 570.1121(1); *Dane Constr, Inc v Royal's Wine & Deli, Inc*, 192 Mich App 287, 294; 480 NW2d 343 (1991). ("We conclude, therefore, that although the amount of damages that plaintiff can recover for breach of contract has been fixed by the mediation award, thereby limiting the amount that may be claimed under the construction lien, plaintiff maintains its right to collect those damages through the remedy provided by the construction lien."). See also MCL

14

arising from the performance of the contract . . . ."[52]  A party may proceed to enforce its lien through foreclosure while simultaneously seeking recovery based on the contract from which the lien arose.[53]  But there can only be one satisfaction.[54]  Thus, a lien foreclosure claim and a claim for breach of the underlying contract are integrally related and allowing a party to pursue both "merely gives it a better chance of recovering what it is owed."[55]

In the instant case, RCG filed a complaint alleging claims for breach of contract and foreclosure of its lien.  Because these claims are integrally related, if RCG is able to establish that it prevailed on its breach of contract claim, it will have prevailed in its "action to enforce a construction lien through foreclosure . . . ."[56]

---

570.1107(1) ("A construction lien acquired pursuant to this act shall not exceed the amount of the lien claimant's contract less payments made on the contract."); MCL 570.1113(1) (stating that an owner or lessee must make a copy of the contract available for inspection upon written demand by a lien claimant); MCL 570.1114 (stating that a contractor must have a written contract in order to have a right to a construction lien on the interest of an owner or lessee in a residential structure); MCL 570.1117(5) ("In connection with an action for foreclosure of a construction lien, the lien claimant also may maintain an action on any contract from which the lien arose.").

[52] *John S Hanes & Co v Wadey*, 73 Mich 178, 181; 41 NW 222 (1889).

[53] *F M Sibley Lumber Co v Wayne Circuit Judge*, 243 Mich 483, 485-489; 220 NW 746 (1928).  This may occur by bringing foreclosure and contract claims in the same action, as in the instant case, or by proceeding with separate contract and foreclosure actions, as in *Bosch v Altman Constr Corp*, 100 Mich App 289, 292-293; 298 NW2d 725 (1980).

[54] See *F M Sibley*, 243 Mich at 486, quoting 40 CJ, p 367.

[55] *Old Kent Bank of Kalamazoo v Whitaker Constr Co*, 222 Mich App 436, 439; 566 NW2d 1 (1997).

[56] See MCL 570.1118(2).

## C. RCG WAS A PREVAILING PARTY

Having determined that RCG was a lien claimant in an action to enforce a construction lien through foreclosure, we must finally determine whether RCG was the prevailing party given that it received a net arbitration award of $450,820.36 in its favor.[57]

Neither the CLA nor *Decina* define the term "prevailing party"; however, as a legal term of art, it must be construed and understood according to its peculiar and appropriate meaning.[58] A "prevailing party" is "[t]he party to a suit who successfully prosecutes the action . . . , prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered."[59] For there to be a "prevailing party," there must have been a material and enforceable alteration of the legal relationship of the parties resulting from judicial imprimatur.[60]

In this case, RCG received an award on its contract claim pursuant to a final and binding arbitration. This award constituted a conclusive determination of the rights and

---

[57] As the Court of Appeals panel observed, the amount awarded was 72% of the amount RCG requested. *Ronnisch*, 306 Mich App at 207 n 4.

[58] MCL 8.3a. In ascertaining the meaning of a term, a court may determine the meaning at the time the statute was enacted by consulting dictionaries from that time. See, e.g., *Cain v Waste Mgt, Inc (After Remand)*, 472 Mich 236, 247; 697 NW2d 130 (2005); *Title Office, Inc v Van Buren Co Treasurer*, 469 Mich 516, 522; 676 NW2d 207 (2004).

[59] *Black's Law Dictionary* (5th ed).

[60] See *Buckhannon Bd & Care Home, Inc v West Virginia Dep't of Health & Human Resources*, 532 US 598, 602-605; 121 S Ct 1835; 149 L Ed 2d 855 (2001); *id*. at 622 (Scalia, J., concurring).

16

obligations of the parties.[61] That is, the arbitration produced an enforceable award that altered the legal relationship of the parties. Moreover, through the arbitration award, RCG prevailed on the main issue in the action, i.e., it obtained an enforceable award compensating it for its labor and materials.[62] Under the CLA, a lien claimant becomes the prevailing party when the rights and obligations of the parties that are at the heart of its lien claim are conclusively determined in its favor. RCG's contract and lien foreclosure claims both sought to obtain payment for the labor and materials supplied by RCG, and both claims necessarily required determinations to be made regarding the parties' rights and obligations stemming from the underlying contract.[63] By prevailing on one of those claims—the contract claim—RCG successfully prosecuted the action,

---

[61] See *Corallo v Merrick Central Carburetor, Inc*, 733 F2d 248, 252 (CA 2, 1984); *Marion Mfg Co v Long*, 588 F2d 538, 541 (CA 6, 1978); *Nix v Spector Freight Sys, Inc*, 264 F2d 875, 877 (CA 3, 1959).

[62] As previously noted, one of the fundamental purposes of the CLA is to protect contractors, workers, and suppliers by providing a method to secure payment for their labor and materials.

[63] The dissent frets that allowing attorney fees when a party prevails on the related contract action will open the floodgates to claims for attorney fees under § 118(2) any time a party prevails on other, unspecified, ancillary claims. However, it is hard to imagine other ancillary claims bearing as close a relationship as the lien foreclosure and underlying contract claims. The plain language of the CLA contemplates that a party may achieve its main objective through either of these integrally related claims. And, not surprisingly, while the CLA repeatedly refers to the underlying contract, it does not specifically refer to any other ancillary claims. See note 51 of this opinion. In any event, such claims are not at issue here and, to the extent they may exist, this Court can address them in a future case.

17

receiving the requisite conclusive determination and thereby prevailing on its main issue.[64]

Further, that the trial court never entered a judgment confirming the arbitration award does not preclude us from determining that RCG was the prevailing party. The lack of judicial imprimatur in RCG's favor is a direct result of the trial court's failure to confirm RCG's arbitration award upon its motion.[65] Contrary to the trial court's conclusion, LOTN's payment of the arbitration award did not obviate the need to confirm the award. In certain circumstances, confirmation may be necessary even if the award has been satisfied. For instance, the winning party at arbitration may desire to seek costs.[66] Or, as in the instant case, a party may wish to seek attorney fees. Although Michigan courts have not spoken on the issue, we agree with a number of other courts

---

[64] That RCG did not recover the full amount of damages sought is not dispositive with regard to whether it was a prevailing party. For the related determination whether a party is the prevailing party for the purposes of MCR 2.625 (concerning taxation of costs), courts have held that recovery of the full amount of damages is unnecessary. See *Forest City Enterprises, Inc v Leemon Oil Co*, 228 Mich App 57, 81; 577 NW2d 150 (1998). Instead, "in order to be considered a prevailing party, that party must show, at the very least, that its position was improved by the litigation." *Id*. RCG can certainly demonstrate that its position was improved by the litigation given that it recovered 72% of the amount sought.

[65] Under MCR 3.602(I), "[a] party may move for confirmation of an arbitration award within one year after the award was rendered." "Confirmation is a summary proceeding where the court merely converts an arbitration award into a final judgment." 6 CJS, Arbitration, § 181, p 248 (2004). A party may seek confirmation for various reasons. For instance, a party may initiate confirmation proceedings if it desires that an official record of the confirmation and judgment be made. See 6 CJS, Arbitration, § 178, pp 244-246 (2004).

[66] See MCR 3.602(M).

18

that a party cannot avoid confirmation by paying an arbitration award before the confirmation proceeding.[67] Therefore, LOTN's payment of the arbitration award should not have precluded the trial court from providing the necessary judicial imprimatur in this case by confirming the award.[68]

---

[67] See, e.g., *Henderson v Summerville Ford-Mercury Inc*, 405 SC 440, 454; 748 SE2d 221 (2013) (holding payment does not moot a confirmation request); *Drummond v State Farm Mut Auto Ins Co*, 280 Neb 258, 262; 785 NW2d 829 (2010) (same); *Mikelson v United Servs Auto Ass'n*, 122 Hawaii 393, 400-401; 227 P3d 559 (Hawaii Ct App, 2010) (concluding that satisfaction did not render confirmation moot because confirmation was statutorily mandated and because confirmation is concerned with the propriety of the award itself and is unrelated to enforcement); *In re Bernstein Family Ltd Partnership v Sovereign Partners, LP*, 66 AD3d 1, 6; 883 NYS2d 201 (2009) ("[I]t is irrelevant in a proceeding to confirm an award whether there is a dispute about whether the award has been fully satisfied."); *Collins v D R Horton, Inc*, 361 F Supp 2d 1085, 1093 (D Ariz, 2005) (holding that confirmation was mandatory, regardless of payment, unless the award is modified, vacated, or corrected); *Pacific Law Group: USA v Gibson*, 6 Cal App 4th 577, 580; 7 Cal Rptr 2d 878 (1992) (holding that nothing in California's arbitration statute limits confirmation to circumstances in which the award has not been paid).

But see *Stewart Title Guaranty Co v Tilden*, 2003 Wy 31, ¶ 9; 64 P3d 739 (2003) (holding a trial court may deny a confirmation motion when satisfaction has rendered the controversy moot); *Murphy v Nat'l Union Fire Ins Co*, 438 Mass 529, 533; 781 NE2d 1232 (2003) (same); *Kenneth W Brooks Trust A v Pacific Media LLC*, 111 Wash App 393, 400; 44 P3d 938 (2002) (same); *Derwin v Gen Dynamics Corp*, 719 F2d 484, 491-493 (CA 1, 1983) (affirming the trial court's denial of confirmation of the award on the ground that confirmation was unwarranted given that the award had been satisfied).

[68] Nor does LOTN's payment of the arbitration award before confirmation affect RCG's status as a prevailing party. Rather, its status as a prevailing party is determined as of the date of the arbitration award, not any subsequent judgment confirming the award. See *Marion*, 588 F2d at 541 ("Thus, if the [arbitration] award is upheld in a reviewing court, the rights of the parties are determined from the date of the award and not the date of the court's judgment confirming the award."); 4 Am Jur 2d, Alternative Dispute Resolution, § 204, p 261 (2016).

19

Finally, we disagree with the dissent's interpretation of the statute, which would require RCG to refuse the proffered payment and continue to litigate its foreclosure claim to remain eligible to seek attorney fees under § 118(2). Such a conclusion would encourage gamesmanship by defendants, allowing them to prolong litigation and delay payment on the contract claim in an attempt to drain the lien claimant's resources before it can obtain a judgment on its lien claim and seek attorney fees.[69] It also directly contravenes this Court's policy of encouraging settlements and discouraging litigation.[70] Therefore, we instead conclude that RCG's acceptance of payment did not preclude it from seeking attorney fees.[71]

We hold that RCG was entitled to seek attorney fees under the CLA because it prevailed on the main issue in its construction lien action when it received a favorable arbitration award on its contract claim. The arbitration award constituted a conclusive

---

[69] Cf. *Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 381; 652 NW2d 474 (2002) ("A lien claimant without significant financial resources could end up being forced to abandon his valid lien claim if met with resistance from the lienor at every turn.").

[70] See *Mayhew v Berrien Co Rd Comm*, 414 Mich 399, 410; 326 NW2d 366 (1982); *People v Gill*, 247 Mich 479, 480; 226 NW 214 (1929).

[71] The dissent asserts that RCG's acceptance of LOTN's payment extinguished its right to a lien, thereby precluding it from later seeking attorney fees. But this argument loses sight of the CLA's plain language, which only requires that a party be a lien claimant when it becomes the prevailing party, not when it seeks attorney fees. See MCL 570.1118(2). Because RCG became the prevailing party by virtue of the arbitration award in its favor, LOTN's subsequent payment did not bar RCG from seeking attorney fees. See *Solution Source*, 252 Mich App at 381 ("Therefore, we hold that satisfaction of a lien does not bar a lien claimant who is the prevailing party from recovering its appellate and postjudgment attorney fees incurred in connection with enforcement of its lien.").

and enforceable determination of the rights and obligations of the parties that were at the heart of RCG's lien claim. Therefore, RCG was the prevailing party in its action to enforce a construction lien through foreclosure.[72]

## IV. CONCLUSION

We hold that that the trial court may award attorney fees to RCG because it was a lien claimant who was the prevailing party in an action to enforce a construction lien through foreclosure by virtue of receiving a favorable arbitration award on its breach of contract claim. The judgment of the Court of Appeals is affirmed, and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.[73]

> David F. Viviano
> Stephen J. Markman
> Bridget M. McCormack
> Richard H. Bernstein

---

[72] We disagree with the dissent's assertions that our opinion is not faithful to the text, context, and purpose of the CLA. Instead, we believe it is painstakingly so and that the dissent's histrionics are a poor substitute for proper legal analysis.

[73] We note that under MCL 570.1118(2), "[t]he court *may* allow reasonable attorneys' fees . . . ." (Emphasis added.) The use of the term "may" indicates discretionary, rather than mandatory, action. *Murphy v Mich Bell Tel Co*, 447 Mich 93, 100; 523 NW2d 310 (1994). Thus, a party who demonstrates that it is a prevailing lien claimant in an action to enforce a construction lien through foreclosure may seek and be awarded attorney fees under MCL 570.1118(2) but is not entitled to them. On remand, the decision to award reasonable attorney fees remains within the sound discretion of the trial court. See *Vugterveen*, 454 Mich at 133 ("A court has discretion to award attorney fees to a prevailing lien claimant . . . .").

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

RONNISCH CONSTRUCTION GROUP,
INC.,

       Plaintiff-Appellee,

v                                  No. 150029

LOFTS ON THE NINE, LLC,

       Defendant-Appellant,
and

LOFTS ON THE NINE CONDOMINIUM
ASSOCIATION, HOTLINE ELECTRIC,
INC., RAM CONSTRUCTION SERVICES
OF MICHIGAN, INC., EAM ENGINEERS,
INC., MICHIGAN AIR PRODUCTS CO.,
STOCK BUILDING SUPPLY, LLC,
WILLIAMS DISTRIBUTING CO., NORTH
STAR PARTNERS, LLC, and THE STATE
BANK,

       Defendants.

---

YOUNG, C.J. (*dissenting*).

    I respectfully, but vigorously, dissent. The majority opinion has done a remarkable thing. It has, through creative statutory interpretation, transformed an act that it acknowledges is solely designed to compensate workers and contractors who prevail on their construction liens into a vehicle for recovery of attorney fees for parties who *have not* prevailed—and cannot now prevail—on their construction liens. Inasmuch as I believe that the Legislature has, by every means at its disposal, textually communicated

that recovery of attorney fees under the Construction Lien Act (CLA)[1] is permitted only to those parties who prevail on a *construction lien*, I cannot join the majority opinion.

## I. FACTS AND PROCEDURAL HISTORY

While I agree with the majority opinion's statement of the facts, I provide here certain additional facts that I think are important to the proper outcome in this case. At the conclusion of arbitration, the arbitrator rendered a net award of $450,820.36 to Ronnisch Construction Group (RCG). The arbitration award expressly stated that RCG's award was based on "[d]irect damages for work performed under the Construction Contract." Additionally, at three separate places within the award, the arbitrator noted that he was reserving the issue of RCG's attorney fees under the CLA. The arbitrator expressly stated:

> The Arbitrator makes no award as to RCG's claim for attorney fees and costs under [MCL 570.1118(2)], and the issue of such attorney fees and costs under the Construction Lien Act is reserved for the Circuit Court in the underlying lawsuit . . . .

Lofts on the Nine (LOTN) paid the arbitration award in full by wiring $484,319.76[2] to the client trust account of RCG's counsel. RCG never returned or otherwise rejected the wire transfer payment. And RCG seemed to realize that acceptance of full payment jeopardized its attorney fees claim because it attempted to condition its acceptance of the payment on being able to seek attorney fees in the trial

---

[1] MCL 570.1101 *et seq.*

[2] This payment included the net arbitration award plus accrued interest.

2

court. This offer of conditional acceptance was declined by LOTN.[3] RCG then moved in the trial court to lift the stay of proceedings, affirm the arbitration award, and award attorney fees under the CLA, claiming that it was a prevailing-party lien claimant under MCL 570.1118(2). The trial court denied RCG's motion for attorney fees, determining that at no point in the proceedings had RCG's CLA claim ever been adjudicated—either by the arbitrator or the trial court. Most important for this case, the trial court also held that RCG's lien claim was extinguished when RCG voluntarily accepted LOTN's tender of payment before equitable proceedings on the lien claim.

The Court of Appeals vacated the portion of the trial court's order pertaining to RCG's attorney fees and remanded the case to the trial court for further proceedings, holding that the trial court erred by holding that it could not award RCG attorney fees and costs under the CLA because RCG "did not *solely* seek recovery on a breach of contract claim: plaintiff's complaint listed both a contract claim and a foreclosure-of-lien claim."[4] On this basis, the Court of Appeals panel concluded that RCG was a prevailing lien

---

[3] RCG thus implicitly recognized that, by unconditionally accepting payment, its attorney fees claim could be extinguished, which it, in fact, was. To maintain that claim, RCG could have refused to accept the proffer of payment and extinguishment of its lien—as contemplated in *Bosch v Altman Constr Corp*, 100 Mich App 289, 297; 298 NW2d 725 (1980) ("[A] lienor is not required to accept tender of payment after a complaint has been filed if he wishes to pursue his statutory right to attorney fees.")—or it could have bargained with LOTN for a larger payment that took into account that accepting payment before adjudication of RCG's lien claim would extinguish the lien claim *and* RCG's attendant claim for attorney fees. None of that happened in this case.

[4] *Ronnisch Constr Group, Inc v Lofts On the Nine, LLC*, 306 Mich App 203, 205, 212; 854 NW2d 744 (2014).

claimant under MCL 570.1118(2).[5] LOTN applied for leave to appeal, which this Court granted.[6]

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision whether to award attorney fees for an abuse of discretion.[7] An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes.[8] Issues of statutory construction are reviewed de novo.[9]

## III. ANALYSIS

Surprisingly, the CLA is about *construction liens*. The title of the CLA explicitly states that its purpose is

> to establish, protect, and enforce *by lien* the rights of persons performing labor or providing material or equipment for the improvement of real property; *to provide for defenses to construction liens*; to provide remedies and prescribe penalties; and to repeal acts and parts of acts.[10]

---

[5] *Id.* at 214.

[6] *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 497 Mich 1003 (2015).

[7] *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008).

[8] *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

[9] *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125, 133; 860 NW2d 51 (2014).

[10] 1980 PA 497, title, as amended by 2010 PA 147 (emphasis added). "Although a [title] is not to be considered authority for construing an act, it is useful for interpreting its purpose and scope." *Malcolm v East Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991).

The majority begins, as it must, by recognizing the purpose of the act. The majority does not have to speculate on this point because the Legislature has been kind enough to spell out the purpose of the CLA—both in the title and the text of the statute. As the majority opinion observes:

> The CLA is "intended to protect the interests of contractors, workers, and suppliers through construction liens, while protecting owners from excessive costs." The fundamental purpose of the CLA with respect to contractors, workers, and suppliers is to provide a method to secure payment for their labor and materials. The Legislature has declared that the CLA is "a remedial statute . . . [that] shall be liberally construed to secure the beneficial results, intents, and purposes of th[e] act." Accordingly, when interpreting the CLA, we should always be mindful of the CLA's intended purpose.[11]

And that is the last time the majority opinion pays attention to the purpose and text of the CLA.[12]

The CLA actually defines who can recover attorney fees and requires that there be a *present* "right" to a lien. As I stated at the outset, the Legislature has textually

---

[11] *Ante* at 5-6 (citations omitted; alterations in original).

[12] The majority disregards this Court's duty to give the statutory language its fair meaning by relying, at least in part, on the legislative directive that the act be " 'liberally construed.' " See *ante* at 6 (citation omitted). The majority has mistaken the directive for liberal construction as free rein to expand the statute to construct an attorney fees remedy that lacks textual and contextual support. Statutory interpretation, whether liberal or strict, is rendered illegitimate when the fair meaning of a text is disregarded. See Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St Paul: Thomson/West, 2012), p 233 (stating that a legislative provision requiring that a statute be liberally construed "should be regarded as requiring a fair interpretation as opposed to a strict or crabbed one—which is what courts are supposed to provide anyway."). A liberal interpretation is " 'clearly inadmissible, if it extends beyond the just and ordinary sense of the terms.' " *Id*. at p 364, quoting 1 Story, *Commentaries on the Constitution of the United States* (2d ed, 1858), § 429, p 304.

5

communicated that this act concerns one thing: how *construction lien* disputes should be resolved. Not surprisingly, the Legislature begins by calling the statute the "construction lien act"[13] and then prescribes a procedure by which claims associated with construction lien disputes shall be resolved.[14] The Legislature was also very specific regarding who can recover attorney fees in these cases:

> In an action *to enforce a construction lien through foreclosure*, the court shall examine each claim and defense that is presented and determine the amount, if any, due to each lien claimant or to any mortgagee or holder of an encumbrance and their respective priorities. *The court may allow reasonable attorneys' fees to a lien claimant who is the prevailing party.*[15]

Again, the Legislature has been careful to inform us who is entitled to recover attorney fees under the CLA because it has also defined a critical term in the quoted provision—who is a "lien claimant." The term "lien claimant" is statutorily defined as "a person *having a right* to a construction lien under this act."[16] Grammatically, this requires that the claimant have a *present*, not a *previous* or *theoretical*, right to a lien at the time the claimant is "the prevailing party." Therefore, under a plain reading of the statute, a trial court may only award attorney fees to a person who "ha[s] a right to a construction lien

---

[13] MCL 570.1101.

[14] See, e.g., MCL 570.1117 (providing extensive procedural requirements for the enforcement of a construction lien under the CLA).

[15] MCL 570.1118(2) (emphasis added). Additionally, the statute provides that a court may allow reasonable attorney fees to a prevailing defendant if the court determines that the lien claimant's action to enforce a construction lien was vexatious. MCL 570.1118(2).

[16] MCL 570.1105(2) (emphasis added).

6

under [the CLA]"[17] when that person "is the prevailing party" "[i]n an action to enforce a construction lien through foreclosure . . . ."[18]

While there are many additional textual indications that the Legislature intended to make attorney fees available only to those who prevailed on their lien claims (some of which I shall shortly address), the fatal flaw of the majority opinion is that it gives no meaning to this definition when it provides attorney fees to RCG, which, not having been adjudicated the prevailing party on the construction lien claim before accepting full payment, plainly was no longer a lien claimant, much less a prevailing one.

In this case, as it was permitted to do under the statute, RCG asserted claims under both the CLA and standard contract law.[19]  Importantly, the trial court determined that RCG had prevailed only on its contract claim, for which attorney fees are not generally available.[20]  RCG's contract claim and lien claim were for identical amounts—a common occurrence, as the CLA expressly requires that a lien under the act "shall not exceed the amount of the lien claimant's contract less payments made on the contract."[21]  While RCG prevailed at arbitration, it did so only on its contract claim, not the lien claim.  Most

[17] *Id*.  Under the CLA, "person" is defined as "an individual, corporation, partnership, sole proprietorship, association, other legal entity, or any combination thereof."  MCL 570.1106(1).

[18] MCL 570.1118(2).

[19] MCL 570.1117(5) ("In connection with an action for foreclosure of a construction lien, the lien claimant also may maintain an action on any contract from which the lien arose.").

[20] See *Haliw v Sterling Heights*, 471 Mich 700, 706-707; 691 NW2d 753 (2005).

[21] MCL 570.1107(1).

7

legally significant, it received and accepted payment in full for all its damages incurred under the contract. As the trial court held at the time RCG moved for attorney fees, RCG had *extinguished* any claimed lien by accepting full payment. Neither the Court of Appeals nor the majority opinion explains why the trial court's holding is erroneous. There is a reason: the trial court's holding is legally correct.

*The majority opinion simply fails to acknowledge that RCG was never more than a presumptive lien claimant that extinguished its lien before the validity of its lien claim was ever determined.* No one has disputed that acceptance of the full amount of the arbitration award on the contract actually *extinguished* RCG's lien. The CLA provides that a lien cannot "exceed the amount of the lien claimant's contract *less payments made on the contract*."[22] Accordingly, when RCG moved in the trial court for an award of attorney fees, it was no longer a "person *having a right* to a construction lien under this act."[23] Even though RCG could no longer legally satisfy the statutory definition of a "lien claimant who is the prevailing party,"[24] the majority opinion has ignored this as an

---

[22] MCL 570.1107(1) (emphasis added). Once there was no longer any amount still owed on the construction contract, RCG clearly did not "hav[e] a *right* to a construction lien under this act." MCL 570.1105(2) (emphasis added). See also *Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 380; 652 NW2d 474 (2002) ("[I]f a construction lien has *not* been satisfied or discharged before trial, a court still has jurisdiction to award attorney fees in relation to enforcement or collection of the lien.") (emphasis added). In this case, the lien was satisfied before it was ever adjudicated on the merits, and the trial court properly held that LOTN paid RCG the amount required by arbitration on the contract claim. Therefore, the trial court did not err by holding that RCG "cannot be deemed to be a prevailing lien claimant in this matter."

[23] MCL 570.1105(2) (emphasis added).

[24] MCL 570.1118(2).

8

inconvenient fact en route to permitting RCG's recovery of attorney fees for prevailing on a *contract* claim.

In sum, there are two separate periods at issue in this case: (1) before RCG accepted LOTN's offer of full payment on the arbitration award, and (2) after it accepted full payment. Before the acceptance of the payment, there had never been any determination that RCG was a valid "lien claimant"—that is, whether RCG was "a person *having a right* to a construction lien under this act."[25] And after RCG accepted the payment, there was no more debt on which any lien could be based.[26]

The majority opinion ignores the grammatical tense of the critical provisions—that attorney fees are only available to "a lien claimant who *is* the prevailing party"[27] and that a lien claimant is someone "*having* a right to a construction lien . . . ."[28] This is the Achilles' heel of the majority opinion, one it attempts to conceal by holding that a trial court can order a hearing after a purported lien claimant files a motion for attorney fees and make factual findings on all elements of the party's lien claim at that later time.[29]

---

[25] MCL 570.1105(2) (emphasis added).

[26] MCL 570.1107(1). See also MCL 570.1115(2) ("A lien claimant who receives full payment for his or her contract shall provide to the owner, lessee, or designee a full unconditional waiver of lien."); *Bosch*, 100 Mich App at 297 ("[A] lienor is not required to accept tender of payment after a complaint has been filed *if he wishes to pursue his statutory right to attorney fees*.") (emphasis added).

[27] MCL 570.1118(2) (emphasis added).

[28] MCL 570.1105(2) (emphasis added).

[29] *Ante* at 7 n 22. In the instant case, the majority offers that such a hearing could have been held when RCG moved for confirmation of the arbitration award. Unfortunately for the majority position, that is not what happened below. Further, the majority opinion's

The majority opinion transforms the statutory requirement for the adjudication of a *present right* to a lien to a mere theoretical right. Even if a trial court could resolve whether the lien claim was valid in some cases in which the lien claimant has not extinguished its lien claim, the majority's proposal cannot apply in this case. As noted, RCG had already accepted full payment from LOTN *before* it moved for attorney fees or confirmation of the arbitration award. Thus, as the trial court properly held, by the time the motion was filed, RCG had extinguished any right it had to a lien and could not honestly contend that it was then a lien claimant.[30] By that time RCG simply could not validly contend that it "ha[d] a right to a construction lien under"[31] the CLA. For the majority, this is a matter of indifference.

The majority opinion could have stopped as soon as it recognized that *this* plaintiff had no legal basis for asserting a valid right to a lien by the time RCG actually moved to

proposal for curing its Achilles' heel problem completely contradicts the majority's own description of what a confirmation of award proceeding *is*. See *ante* at 18 n 65, quoting 6 CJS, Arbitration, § 181, p 248 (2004) ("Confirmation is a *summary* proceeding where the court *merely* converts an arbitration award into a final judgment.") (emphasis added).

[30] This is not to say that an alleged lien claimant will always have to reject payment of an award to recover attorney fees. In fact, in the typical case brought under the CLA, the lien claimant will necessarily have been adjudicated a "lien claimant" under the CLA when it prevails. The majority fails to give any meaning to the defined term "lien claimant," which requires that the claimant be a person "*having* a right" to a lien, MCL 570.1105(2) at the time it "prevail[s]," MCL 570.1118(2). Those provisions require an adjudication that the majority now holds can happen *after* the right to a lien has been extinguished, not before. If a putative lien claimant attempts to recover attorney fees on a now-satisfied, never-adjudicated lien claim, the prior acceptance of judgment satisfying the lien extinguishes both the lien, MCL 570.1107(1), and any claim to attorney fees under the act, MCL 570.1118(2).

[31] MCL 570.1105(2).

10

confirm the arbitration award, much less when it moved to recover attorney fees. Nonetheless, the majority opinion goes even further, creating a remedy that the plain language of the CLA precludes and that cannot apply to RCG on the facts of this case.

At no point does the majority opinion contradict the proposition that, under the CLA and our caselaw, acceptance of full payment extinguishes a lien. Because it does not address this fundamental principle concerning liens and ignores that the CLA dictates that one cannot have a lien for more than is owed,[32] the majority is obligated to deflect the reader's attention to other matters. The majority expends a lot of effort to avoid recognizing that RCG never had—and could not have—a valid lien after it accepted full payment of the arbitration award and without a prior adjudication of its right to a lien:

> Further, that the trial court never entered a judgment confirming the arbitration award does not preclude us from determining that RCG was the prevailing party. The lack of judicial imprimatur in RCG's favor is a direct result of the trial court's failure to confirm RCG's arbitration award upon its motion. Contrary to the trial court's conclusion, LOTN's payment of the arbitration award did not obviate the need to confirm the award. In certain circumstances, confirmation may be necessary, even if the award has been satisfied. For instance, the winning party at arbitration may desire to seek costs. Or, as in the instant case, a party may wish to seek attorney fees. Although Michigan courts have not spoken on the issue, we agree with a number of other courts that a party cannot avoid confirmation by paying an arbitration award before the confirmation proceeding. Therefore, LOTN's payment of the arbitration award should not have precluded the trial court from providing the necessary judicial imprimatur in this case by confirming the award.[33]

---

[32] MCL 570.1107(1).

[33] *Ante* at 18-19 (citations omitted).

11

None of the foregoing statements about the necessity of confirmation of an arbitration award addresses why a party that has extinguished its lien by accepting full payment is nevertheless a party that has a present right to a lien. Instead, the majority opinion shifts to talk about the validity of the confirmation of the arbitration award, rather than the validity of the underlying lien.

The majority suggests that only its interpretive gobbledygook can prevent what it considers the gamesmanship of a party's acceptance or rejection of payment:

> Finally, we disagree with the dissent's interpretation of the statute, which would require RCG to refuse the proffered payment and continue to litigate its foreclosure claim to remain eligible to seek attorney fees under [MCL 570.1118(2)]. Such a conclusion would encourage gamesmanship by defendants, allowing them to prolong litigation and delay payment on the contract claim in an attempt to drain the lien claimant's resources before it can obtain a judgment on its lien claim and seek attorney fees. It also directly contravenes this Court's policy of encouraging settlements and discouraging litigation. Therefore, we instead conclude that RCG's acceptance of payment did not preclude it from seeking attorney fees.[34]

The majority opinion's purpose-driven, not textual, argument ignores the underlying problem with its remedy in this case and shifts the discussion to what it sees as the opportunity for "gamesmanship" available to defendants under my construction of the CLA.[35] Whether the legal consequences of having to choose to accept full payment or seek a judicial determination regarding the validity of RCG's lien imposes a cost can be characterized as promoting gamesmanship, the majority opinion has wholly ignored

---

[34] *Ante* at 20 (citations omitted).

[35] *Ante* at 20.

12

one requirement of a lien claim on which CLA attorney fees necessarily must be predicated—that there is some construction contract payment *owed* to the lien claimant.[36] Settlements do sometimes require parties to choose among options, and sometimes selecting one may preclude complete optimization of the party's preferred outcome. If none of the options is sufficiently acceptable, a party may opt to have someone adjudicate the dispute. RCG chose to accept full payment with full awareness that doing so might jeopardize its claim for CLA attorney fees.[37]

Apart from the fact that the majority opinion creates a remedy that RCG cannot legally receive, arguably the most startling thing about the majority opinion is that it takes a statutory framework called the "construction lien act"[38] and turns it into a vehicle for attorney fees wholly divorced from success on the specific lien foreclosure action that this statutory scheme creates and defines. It is by delinking the entitlement to CLA attorney fees from success on the lien foreclosure action that the majority opinion creates a second problem: How does one draw the line on which ancillary claims create an entitlement to attorney fees and which do not? This is an exquisitely difficult question for the majority to answer because both the CLA and our court rules provide permission

---

[36] MCL 570.1107(1).

[37] See note 3 of this opinion.

[38] MCL 570.1101. Again, the CLA was intended to "establish, protect, and enforce *by lien* the rights of persons performing labor or providing material or equipment for the improvement of real property; to provide for defenses to *construction liens*; [and] to provide remedies and prescribe penalties . . . ." 1980 PA 497, title, as amended by 2010 PA 147 (emphasis added).

13

to join ancillary claims to the lien foreclosure claims.[39] Once success on the *lien* claim is no longer the necessary precondition to an attorney fees award under the CLA, unless success on most ancillary claims can be eliminated as a trigger for attorney fees, the majority allows a very expansive holding in favor of a general right to attorney fees on *any* claim brought with a construction lien foreclosure claim.

To avoid triggering attorney fees through success on any and all ancillary claims, the majority devises a new rule: success on contract claims alone is a trigger for the recovery of attorney fees under the CLA. The majority adopts this rule because it believes that the only thing the CLA requires as a precondition to an award of attorney fees is recovery on a claim "integrally related" to the CLA claim.[40]

Presumably, had the Legislature been content with the majority's broader approach to a contract-based recovery of attorney fees for claims of unpaid construction debts, it would not have bothered with enacting the CLA's exacting *lien foreclosure* process, which requires recording a lien within a prescribed time frame, among other obligations. Indeed, at common law, a contractor always had a *contract* claim for any unpaid bills but no entitlement to attorney fees. So, the effect of the majority's construction of the CLA is to undercut the lien foreclosure statutory process and attorney fees remedy entirely to permit the recovery of attorney fees based on a simple common-law contract claim.

---

[39] MCL 570.1117(5); MCL 570.1118(2); MCR 2.203(A); MCR 2.203(B).

[40] *Ante* at 17 n 63.

14

That strikes me as a surprising result. I think it doubtful that the Legislature created an unnecessary lien foreclosure process with the intention of establishing a new route to recover attorney fees for an existing common-law contract claim—particularly when the Legislature went so far to create a statutory regime that repeatedly highlights that the *prevailing foreclosure lien claimant* is eligible for recovery of attorney fees. Should the Legislature decide to pass the Construction *Contract* Claim Act with a similar provision for attorney fees for construction contract claims, I will surely join the majority's conclusion that success on a contract claim suffices to allow such an award. Until then, I find the majority's construction untenable.

The great irony is that, in purporting to construe the CLA, the majority has converted a statutory attorney fees remedy requiring prevailing on a *lien foreclosure action* into one in which prevailing on the "main issue" of the lawsuit is sufficient. Very simply, there is no textual support for an attorney fees remedy under the CLA by " 'prevailing on the main issue . . . .' "[41] Of course, this extension of entitlement to statutory attorney fees to any ancillary claims, and the subsequent purported limitation to contract claims, finds no anchor in the actual text of the CLA; nor does the majority opinion explain how the "main issue" envisioned by a statute designed to establish *lien rights* for persons performing labor or providing material or equipment for the improvement of real property[42] is addressed by awarding attorney fees on a standard common-law contract claim. The majority opinion's rationale ignores both the actual

---

[41] *Ante* at 16 (citation and quotation marks omitted).

[42] See 1980 PA 497, title, as amended by 2010 PA 147.

text and *context* of the CLA. This is a remarkable, but not laudable, accomplishment for a court. The majority opinion gives primacy to what it perceives as the purpose of the legislative scheme at the expense of the statute's text. This Court abandoned that so-called approach to statutory construction almost twenty years ago, striving to achieve statutory constructions founded on the actual language of an act.[43]

The majority opinion justifies including contract claims and excluding other ancillary claims as a trigger for entitlement to attorney fees by asserting that lien claims and contract claims are "integrally related" to lien foreclosure actions. While I concede that a contract claim for labor or materials is logically related to a lien foreclosure action,[44] that conclusion does not explain why other ancillary claims are *less* "integrally related" to lien claims and, therefore, do not trigger an entitlement to attorney fees.[45] It is

---

[43] "[W]hen reviewing questions of statutory construction, our purpose is to discern and give effect to the Legislature's intent. We begin by examining the plain language of the statute. It is a fundamental principle of statutory construction that the words used by the Legislature shall be given their common and ordinary meaning, and only where the statutory language is ambiguous may we look outside the statute to ascertain the Legislature's intent." *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 159; 615 NW2d 702 (2000) (MARKMAN, J.) (citation omitted).

[44] See MCL 570.1107(1).

[45] This problem is one that will surely arise in future litigation. The Michigan Court Rules require parties to join every claim the pleader has against an opposing party arising out of the transaction or occurrence that is the subject matter of the action. MCR 2.203(A). Further, like the CLA joinder provisions, "[a] pleader *may* join as either independent or alternate claims as many claims, legal or equitable, as the pleader has against an opposing party." MCR 2.203(B) (emphasis added). I fear the majority opinion will generate additional litigation over just how "integrally related" ancillary claims must be in order to recover attorney fees (e.g., "The general contractor ran over my toolbox, thereby increasing my cost of performance on this construction contract.") And, in fact, the majority explicitly notes that future litigation will be needed to determine future ancillary claims. See *ante* at 17 n 63.

16

not surprising that the majority offers no additional explanation for its line drawing because its rationale is not tied to the text of the CLA. Once the connection between success on the lien foreclosure action and entitlement to attorney fees is broken, the majority is forced to draw an arbitrary line to make its expansion of entitlement to attorney fees appear to be more modest than it is.

Stunningly, what the majority opinion does today is exactly that which this Court rejected in *H A Smith Lumber & Hardware Co v Decina*.[46] Though it attempts to distinguish *Decina*, the majority's analysis fails either to make a legally significant distinction between that case and the instant dispute or provide a tenable construction of the statutory text. The lien claimants, in both *Decina* and the instant appeal, brought alternative claims—a CLA claim and a contract claim—for the same remedy. The trial courts in both *Decina* and this case granted relief on the basis of the contract claim. In *Decina*, whether accurate or not, the trial court actually stated that the plaintiffs " 'each ha[d] valid claims of lien,' "[47] even though the liens did not attach to the construction property.[48] In the instant case, the trial court expressly stated, repeatedly, that neither it nor the arbitrator had ever adjudicated RCG's lien claim and held that RCG had extinguished its lien. Thus, the *Decina* lien claimants had an arguably stronger—though

---

[46] *H A Smith Lumber & Hardware Co v Decina*, 480 Mich 987 (2007).

[47] *H A Smith Lumber & Hardware Co v Decina (On Remand)*, 265 Mich App 380, 382; 695 NW2d 347 (2005), rev'd 480 Mich 987 (2007).

[48] It is hard to imagine how one could have a valid claim of lien that never attaches to the property in question. Nevertheless, the lien claimants in *Decina* certainly did not prevail on the lien claims they alleged.

ultimately unsuccessful—argument that the trial court had actually adjudicated its lien claim than RCG does in the instant case.

At the time plaintiff accepted full payment, it could not plausibly argue that it "ha[d] a right to a construction lien under [the CLA],"[49] when no such *right* was ever determined to exist by the trial court. Interestingly, the majority has no problem calling RCG a "lien claimant,"[50] despite the fact that neither the trial court nor the arbitrator—the only fact-finding entities that have been involved in this case—ever made such a determination. It is axiomatic that this Court is not a fact-finding body. I believe that any finding that RCG meets all the requirements of a lien claimant is one that can only be made by the fact-finder, i.e., the trial court or the arbitrator, and in this case both expressly refused to do so.[51] Unexplained is how a *subsequent* hearing on attorney fees now ordered by the majority can revive RCG's lien, which it extinguished by accepting full payment. As a consequence, the majority opinion has ordered a futile act, disguising that it has abandoned the statute to create an attorney fees remedy the Legislature never contemplated.

---

[49] MCL 570.1105(2).

[50] *Ante* at 7-11.

[51] In this case, as stated, the trial court *held* that RCG had *extinguished* its lien claim by accepting full payment. The majority opinion never bothers to explain why this holding is erroneous and must be overruled.

18

## IV. CONCLUSION

For the reasons stated, I do not believe that RCG is entitled to attorney fees. The attorney fees provision of the CLA only allows a trial court to award attorney fees "to a lien claimant who is the prevailing party."[52] Because RCG did not meet the statutory definition of "lien claimant" under the CLA, and because it voluntarily extinguished its lien claim before the trial court could have so determined, I do not believe RCG is entitled to attorney fees and would reverse the Court of Appeals on that issue. For these reasons, I dissent.

Robert P. Young, Jr.
Brian K. Zahra
Joan L. Larsen

---

[52] MCL 570.1118(2).